827 A.2d 313 (2003)
362 N.J. Super. 124
ZORBA CONTRACTORS, INC., Plaintiff,
v.
HOUSING AUTHORITY OF THE CITY OF NEWARK, Defendant/Third-Party Plaintiff-Respondent/Cross-Appellant,
v.
Osmose Wood Preserving, Inc., Third-Party Defendant-Appellant/Cross-Respondent, and
Georgia-Pacific Corporation and Wood Treating Corp. of Philadelphia, Third-Party Defendants-Cross-Respondents, and
Richard Becker, Becker/Wolczynski, Rames Patel, P.M.K. Engineering & Testing, Inc., James McCullar, James McCullar & Associates Architects, Richard Jordan d/b/a C.J. Contractors, Weyerhauser Corp., Hoover Treated Wood Products, and Circle 84 Lumber Co., Third-Party Defendants.
Superior Court of New Jersey, Appellate Division.
Argued December 3, 2002.
Decided July 11, 2003.
*315 Richard J. Hull, Livingston, argued the cause for appellant/cross-respondent and cross-respondent Wood Treating Corp. of Philadelphia (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; T. Gregory Slother, of the Florida Bar, of counsel; Mr. Hull and Martin P. Schrama, on the brief).
Richard P. Coe, Jr. argued the cause for respondent/cross-appellant (Frank Armour, Newark Housing Authority General Counsel and Weir & Partners, attorneys; Mr. Coe, on the brief).
David J. D'Aloia argued the cause for cross-respondent Georgia-Pacific Corporation (Saiber Schlesinger Satz & Goldstein, attorneys; Mr. D'Aloia, of counsel and on the brief; Lisa M. Papp, on the brief).
Before Judges SKILLMAN, CUFF and WINKELSTEIN.
*314 The opinion of the court was delivered by SKILLMAN, P.J.A.D.
The primary issue presented by this appeal is whether there is a right to a jury trial in a private action under the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -109. We conclude that the 1971 amendment to the CFA, which authorized damages actions by defrauded consumers, reflects an implied legislative intent to provide for jury trials.
We begin with a brief sketch of the long and convoluted procedural history of this case, which is now almost fifteen years old, and the facts necessary to understand the issues presented. The case arises out of a contract between defendant-third-party plaintiff Housing Authority of the City of Newark (NHA) and plaintiff Zorba Contractors (Zorba), under which Zorba undertook to modernize roofs on twenty-two garden apartment buildings in three public housing complexes operated by the NHA. The contract required Zorba to use fire-retardant-treated plywood that met performance standards established by the NHA. To satisfy this requirement, Zorba bought plywood manufactured by Georgia-Pacific Corp. (Georgia-Pacific), which contracted *316 with Wood Treating Corp. of Philadelphia (Wood Treating) to apply fire-retardant chemicals to the plywood. Wood Treating used a product manufactured by Osmose Wood Preserving, Inc. (Osmose), called "Flameproof LHC," to provide the fire retardant treatment. After completion of the project, the NHA determined that the plywood failed to satisfy its performance standards and that the roofs were deficient in various respects. Consequently, the NHA had to replace the roofs.
The case commenced as an action by Zorba against the NHA to collect for extra work Zorba allegedly performed under various change orders. The NHA filed a counterclaim which asserted that Zorba's workmanship had been deficient and that it had submitted fraudulent change orders. The NHA also filed a third-party complaint against numerous other parties that were allegedly responsible for the defective fire-retardant plywood installed by Zorba, asserting claims for negligence, strict liability in tort, products liability and breach of warranty. The third-party complaint was amended several times to name additional third-party defendants, including Georgia-Pacific, Wood Treating and Osmose, and to assert additional causes of action, including claims for common-law fraud and violations of the CFA. The NHA demanded a jury trial on all its claims. Zorba and the NHA settled their claims at an early stage in the litigation, and the case proceeded solely on the NHA's third-party complaint.
The trial court granted a motion by Georgia-Pacific, Osmose and Wood Treating to dismiss the NHA's claims under the CFA on the ground that the NHA is not a "person" as defined by N.J.S.A. 56:8-1(d) and thus is not entitled to the protections of the Act. On an interlocutory appeal, we reversed, concluding in a published opinion that the term "person" should be "expansively construe [d] ... to include a public authority when acting as a consumer." Zorba Contractors, Inc. v. Housing Auth. of Newark, 282 N.J.Super. 430, 435, 660 A.2d 550 (App.Div.1995). The NHA apparently abandoned its common-law fraud and CFA claims against Georgia-Pacific and Wood Treating at some later point, electing to pursue those claims solely against Osmose.
The trial court subsequently granted Georgia-Pacific's motion to dismiss the NHA's warranty claims on the ground that it was not joined in the action within the one-year limitation period provided by the invoices and customer-order forms that accompanied its deliveries of treated plywood. By a written opinion issued on February 9, 1998, the court also granted Osmose and Wood Treating's motion for summary judgment dismissing NHA's warranty claims. As a result, the case went to trial before a jury solely on the NHA's claims against Osmose for common-law fraud and violations of the CFA.
At the close of the NHA's case, the trial court granted Osmose's motion to dismiss the common-law fraud claim but denied its motion to dismiss the CFA claim. At this point, the court discussed with counsel whether there was a right to a jury trial concerning the CFA claim and, if not, whether the jury should be discharged. The NHA suggested that even if there was no right to a jury trial, the jury could be retained to make advisory findings. At the conclusion of this colloquy, the court stated:
I'm going to go ahead and present this case to the jury. And if ... you want to address ... at some point down the line... in what sense I should consider that jury verdict, I'll deal with that.
During the charge conference, the court again indicated it was uncertain whether *317 the jury's findings regarding the NHA's CFA claim would be binding:
I take it, gentlemen, we have not yet resolved that issue and this may well be an advisory jury, ... you both seem to recognize that.
Counsel concurred with this statement.
The court subsequently submitted the case to the jury, which returned a verdict finding that Osmose had violated the CFA but that this violation was not a proximate cause of the damages claimed by the NHA. After receiving this verdict, the trial court informed the parties:
[A]s we discussed earlier ... I will also review the evidence and ... render a decision in this matter....
Four-and-a-half months later, the trial court issued an oral decision which concluded that Osmose's representations concerning its product violated the CFA and that those violations were a proximate cause of the NHA's damages. Although the court stated at the outset of its decision that "[t]he trial was conducted before an advisory jury[,]" it did not set forth the reasoning underlying its implicit decision that the NHA's CFA claim was not triable before a jury. The court also concluded that Zorba's work on the roof was negligently performed and that that negligence was a proximate cause of the NHA's damages. The court allocated 67% of the responsibility for those damages to Osmose and 33% to Zorba. The court determined that the NHA's total recoverable damages were $622,280, of which Osmose's allocable share was $416,927.60. The court trebled those damages, as required by the CFA, which resulted in a total award of $1,250,782.80. The court also awarded $137,275.65 in prejudgment interest and $162,024.25 for attorneys' fees, for a total judgment of $1,550,082.70. The court denied Osmose's motion to apply certain credits that would have reduced the amount of the judgment.
On appeal, Osmose argues that there was a right to a jury trial on the NHA's consumer fraud claim and that the jury returned a binding verdict in Osmose's favor. In the alternative, Osmose argues that even if the trial court correctly concluded that the jury's verdict was purely advisory, the NHA failed to establish various elements of a CFA cause of action and therefore the judgment in the NHA's favor must be reversed. Osmose also argues that the court erred in refusing to instruct the jury that the NHA was required to prove its claim by clear and convincing evidence and in denying a set-off for the amount the NHA collected from a settlement with another third-party defendant. The NHA has filed a cross-appeal from the pretrial dismissal of its negligence, strict liability, products liability and breach of warranty claims against Osmose, Wood Treating and Georgia-Pacific and also the dismissal at trial of its common-law fraud claim against Osmose.
We conclude that there is a right to a jury trial in a private action under the CFA and that the jury returned a valid verdict in Osmose's favor. Consequently, we reverse the judgment entered against Osmose. This makes it unnecessary to consider the other arguments Osmose presents in support of its appeal. On the cross-appeal, we affirm the order dismissing the NHA's negligence, strict liability, products liability and breach of warranty claims.

I
In its initial brief, Osmose argued that the jury returned a valid verdict in its favor and that the trial court erred in treating that verdict as advisory only. Osmose noted that it was still an open question whether there is a right to a jury trial *318 in a private action under the CFA. Osmose contended that it would be entitled to reinstatement of the jury verdict if this court concludes there is a right to a jury trial in a CFA action. In the alternative, Osmose argued that even if there is no right to a jury trial in a CFA action, the entire case, including the NHA's CFA claim, was tried to a jury without objection and therefore the jury's verdict was binding. See R. 4:35-1(b). At oral argument, we suggested that the question whether there is a right to a jury trial in a CFA action should be decided before considering whether, even if there is no such right, the jury's verdict was nevertheless binding because the case was tried before a jury without objection. Accordingly, we directed the parties to submit supplemental briefs on the jury trial issue.
Osmose argues in its supplemental brief both that the 1971 amendment to the CFA reflects an implied legislative intent to authorize trial by jury in private CFA actions and that there is a constitutional right to a jury trial because this statutory cause of action is closely related to common-law fraud, which was triable before a jury, and the relief that can be obtained in a private CFA action is primarily "legal" in nature.
It is firmly established that "courts should not reach constitutional questions unless necessary to the disposition of the litigation." O'Keefe v. Passaic Valley Water Comm'n, 132 N.J. 234, 240, 624 A.2d 578 (1993). Consequently, if the construction of a statute may obviate the need to consider its constitutionality, a court should first decide the statutory construction issue. See Schulman v. Kelly, 54 N.J. 364, 370, 255 A.2d 250 (1969).
We conclude that N.J.S.A. 56:8-19 reflects an implied legislative intent to provide for jury trials in private actions under the CFA. This conclusion makes it unnecessary to decide whether a jury trial is constitutionally mandated in such actions. This conclusion also makes it unnecessary to consider Osmose's argument that the jury's verdict was binding because the NHA failed to object before trial to a jury trial of its CFA claim.
There are only two reported opinions that have considered whether there is a right to a jury trial in a private CFA action, Chattin v. Cape May Greene, Inc., 124 N.J. 520, 521-22, 591 A.2d 943 (1991) (Stein, J., concurring), and Strawn v. Canuso, 271 N.J.Super. 88, 94, 638 A.2d 141 (App.Div.1994), aff'd 140 N.J. 43, 657 A.2d 420 (1995). Chattin was a complex consumer fraud action which was tried twice before juries. See Chattin v. Cape May Greene, Inc., 216 N.J.Super. 618, 623, 640-41, 643, 524 A.2d 841 (App.Div.), certif. denied, 107 N.J. 148, 526 A.2d 209 (1987); Chattin v. Cape May Greene, Inc., 243 N.J.Super. 590, 595-97, 581 A.2d 91 (App. Div.1990), aff'd o.b., 124 N.J. 520, 591 A.2d 943 (1991). No party ever questioned the right to a jury trial on the CFA claims in Chattin. Our second decision reversed a verdict in favor of plaintiffs on the ground that the trial court incorrectly instructed the jury concerning the elements of a CFA claim. 243 N.J.Super. at 597-604, 581 A.2d 91. However, we found no error in the jury instructions relating to damages and therefore remanded for a new trial on liability only. Id. at 604-06, 581 A.2d 91. Judge Brody dissented on the ground that any errors in the jury instructions were harmless. Id. at 621-24, 581 A.2d 91. The Supreme Court affirmed "substantially for the reasons expressed" in the majority opinion of this court. 124 N.J. at 521, 591 A.2d 943. Thus, unless there was a subsequent settlement, the case was tried before a jury for a third time.
Justice Stein wrote a concurring opinion in Chattin joining in the majority's affirmance of the reversal of the jury's liability *319 verdict. In explaining his reasons for writing separately, Justice Stein stated:
I write separately because I anticipate that the issue remanded by the Appellate Division for the jury's determination at retrial will be particularly difficult for a jury to adjudicate. I also perceive that the Appellate Division's opinion may not adequately guide the trial court in framing an instruction that will clarify for the jury the distinction between conduct violative of the Act without proof of intent and conduct that violates the Act only if committed with an intent to deceive the purchaser or customer.
[Ibid.]
However, before discussing the form of jury instruction the trial court should give at a new trial, Justice Stein noted that whether there is a right to a jury trial in a private action under the CFA was still an open question:
Preliminarily, I note that although this case was tried to a jury, no court has yet determined whether there exists a right to trial by jury for damage claims asserted under the Consumer Fraud Act. We explained in Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 472-73, 541 A.2d 1063 (1988), that
[a]s originally enacted, the Act was exclusively enforced by the Attorney General, who was provided with broad powers to investigate, N.J.S.A. 56:8-3, subpoena records, N.J.S.A. 56:8-5, and seek injunctions prohibiting fraudulent conduct and orders of restitution to make whole any person damages by conduct violating the Act, N.J.S.A. 56:8-8....
In 1971, the Legislature amended the Act to permit a private right of action through which a successful plaintiff receives treble damages, reasonable attorneys' fees, filing fees, and costs. L. 1971, c. 247, § 7, codified at N.J.S.A. 56:8-19. [Footnote omitted.]
The 1971 amendment to the Act, however, did not provide for jury trials, and no right to a jury trial has been recognized in suits brought under the Act by the Attorney General seeking equitable relief and financial penalties. [Citations omitted.] Although this Court in Shaner v. Horizon Bancorp., 116 N.J. 433, 561 A.2d 1130 (1989), rejected the right to a jury trial in the context of a claim for discriminatory termination on the basis of age under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -42, its holding could be read to suggest by analogy that a statutorily-created cause of action under the Consumer Fraud Act does not carry with it the right to a jury trial. Id. at 454-55, 561 A.2d 1130.
[Id. at 521-22, 591 A.2d 943.]
Justice Stein concluded his discussion of the jury trial issue without expressing any firm conclusion as to how it should be decided:
In any event, that issue is not before us and I advert to it only to emphasize my perception that the issue remanded by the Appellate Division for retrial is not particularly well-suited for resolution by a jury.
[Id. at 522, 591 A.2d 943.]
The Supreme Court has not considered the right to a jury trial in a private CFA action since Justice Stein's brief and inconclusive discussion of the issue in Chattin.
The only other reported opinion that refers to the issue is this court's opinion in Strawn. The primary issue in Strawn was whether the builders of new homes have an affirmative duty to disclose the existence of a nearby closed landfill to potential buyers. See 271 N.J.Super. at 100-07, 638 A.2d 141. A cross-appeal also raised the question whether there is a right to a *320 jury trial in connection with a CFA claim. Id. at 95, 638 A.2d 141. However, a concession during oral argument, the nature of which is not disclosed in our opinion, obviated the need for the court to decide the question:
Finally, we consider the cross-appeal which urges a reversal of the order requiring a jury trial on the Consumer Fraud Act claims. Based on concessions made during oral argument, the trial judge is directed to use the trial jury as an advisory jury on the Consumer Fraud Act claims. Special interrogatories should be employed so that a proper verdict can be molded.
[Id. at 112, 638 A.2d 141.]
The Supreme Court granted defendants' motion for leave to appeal and affirmed, holding that a builder-developer or broker selling homes for a builder-developer is "liable for nondisclosure of off-site physical conditions known to it and unknown and not readily observable by the buyer if the existence of those conditions is of sufficient materiality to affect the habitability, use, or enjoyment of the property and, therefore, render the property substantially less desirable or valuable to the objectively reasonable buyer." 140 N.J. at 65, 657 A.2d 420. However, the Court did not consider the right to a jury trial in connection with a CFA claim, probably because that issue had been resolved by the unspecified concession at the oral argument before this court.
The starting point for determining whether there is a right to a jury trial in a private action under the CFA is Shaner v. Horizon Bancorp, 116 N.J. 433, 561 A.2d 1130 (1989), which held that there was no right to a jury trial in a private action under the Law Against Discrimination (LAD) 10:5-1 to -49.[1] Initially, the only remedies under the LAD were those provided in administrative proceedings before the Division on Civil Rights (DCR). If a violation of the LAD was found at a hearing before the DCR, the Director was authorized to "issue ... an order requiring... respondent to cease and desist from such unlawful employment practice or unlawful discrimination and to take such affirmative action, including, but not limited to, hiring, reinstatement or upgrading of employees, with or without back pay ... or extending full and equal accommodations, advantages, facilities, and privileges to all persons, as in the judgment of the director, will effectuate the purpose of this act ..." Id. at 438, 561 A.2d 1130 (quoting N.J.S.A. 10:5-17).
In 1979, the Legislature amended the LAD to expressly authorize a private judicial action as an alternative to an administrative proceeding before the DCR. L. 1979, c. 404. This amendment did not include any specific provision concerning the remedies that could be pursued in a private judicial action. Thus, the Court concluded that a trial court's remedial authority in a private LAD action "parallels the [DCR's] enumerated administrative powers." Id. at 440, 561 A.2d 1130. The Court also indicated that "[t]he legislative history suggests that in providing an effective judicial cause of action [the] extensive equitable forms of relief [provided under N.J.S.A. 10:5-17] would not become incidental to purely legal forms of relief." Id. at 442, 561 A.2d 1130. Accordingly, the Court concluded that "the New Jersey Legislature did not expressly or by implication create a conventional action at law, nor did it intend to confer the right to a jury trial when it amended the LAD to permit a judicial remedy." Id. at 446, 561 *321 A.2d 1130. The Court also concluded that article I, paragraph 9 of the New Jersey Constitution does not confer a right to a jury trial in a private LAD action, because "the LAD provides a distinctive statutory cause of action that is not equivalent in purpose or function to a common law cause of action[,]" and "[a]vailable relief under the LAD is predominantly equitable in nature[.]" Id. at 453, 561 A.2d 1130.
The CFA, like the LAD, initially did not authorize a private judicial action to enforce its regulatory provisions. Judicial and administrative enforcement actions brought by the Attorney General provided the only remedies for violations. In a judicial enforcement action, the Attorney General could seek an injunction prohibiting a defendant from continuing a practice that violates the CFA as well as appointment of a receiver to take over operation of the violator's business. N.J.S.A. 56:8-8. In addition, the Attorney General could seek statutory penalties, N.J.S.A. 56:8-13, and restitution to any defrauded consumer, N.J.S.A. 56:8-9, -10. The Chancery Division concluded that there was no right to a jury trial in a judicial enforcement action brought by the Attorney General under these provisions because "the remedies provided ... are injunction, restitution and appointment of a receiver, all clearly equitable in nature." Kugler v. Banner Pontiac-Buick Opel, Inc., 120 N.J.Super. 572, 581, 295 A.2d 385 (Ch.Div.1972).
In 1971, the Legislature amended the CFA to expressly authorize a private cause of action. L. 1971, c. 247, § 7; N.J.S.A. 56:8-19. However, unlike the 1979 amendment to the LAD, which did not include a specific remedies provision and therefore was construed in Shaner to allow a private litigant simply to pursue the same equitable remedies as the Director of the DCR is authorized to award, the 1971 amendment to the CFA specifically set forth the remedies that can be awarded in a private action. N.J.S.A. 56:8-19 provides:
Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction. In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section, ... the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit.
Therefore, under the tests set forth in Shaner, the determination whether there is a right to a jury trial in a private CFA action turns on whether an action under N.J.S.A. 56:8-19 "must be viewed more in the nature of an equitable than a legal cause of action[,]" 116 N.J. at 441, 561 A.2d 1130, or is "readily analogous to [a] conventional legal action[]." Id. at 446, 561 A.2d 1130.
N.J.S.A. 56:8-19 authorizes the award not only of "equitable" but also "legal relief." "The word `legal' is a term of art." Lorillard v. Pons, 434 U.S. 575, 583, 98 S.Ct. 866, 871, 55 L.Ed.2d 40, 47 (1978). If an action is "legal" in nature, the right to a jury trial attaches. State v. One 1990 Honda Accord, 154 N.J. 373, 377, 712 A.2d 1148 (1998). Consequently, the Legislature's characterization of a cause of action as "legal" may justify an inference that it intended to authorize a jury trial. See Lorillard, supra, 434 U.S. at 583, 98 S.Ct. at 871, 55 L.Ed.2d at 47 ("We can infer ... that by providing specifically for legal relief, Congress knew the significance of the term `legal' and intended *322 that there would be a jury trial...."). Moreover, the forms of relief specifically authorized by N.J.S.A. 56:8-19 are monetarycompensatory damages, trebling of those damages and attorneys feeswhich is a hallmark of a legal action. As the Court noted in Curtis v. Loether, 415 U.S. 189, 196, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260, 267 (1974), the award of "actual and punitive damages" (under the Consumer Fraud Act, the consumer's "ascertainable loss" and treble damages) "is the traditional form of relief offered in the courts of law." See Wanetick v. Gateway Mitsubishi, 163 N.J. 484, 494-96, 750 A.2d 79 (2000) (noting that treble damages awarded under the CFA are a form of punitive damages).
Furthermore, N.J.S.A. 56:8-19 only allows a person who has suffered an "ascertainable loss of moneys or property" to maintain a private CFA action. Thus, the essential legislative objective in authorizing a private CFA action was to afford defrauded consumers an opportunity to obtain legal relief for such "ascertainable loss[es]." In addition, N.J.S.A. 56:8-20 requires any party who asserts a private claim under N.J.S.A. 56:8-19 to give the Attorney General notice of the claim, so that the Attorney General can determine whether to intervene in the action. The evident objective of this provision is to afford the Attorney General an opportunity to seek the expansive forms of equitable relief authorized by N.J.S.A. 56:8-8 and -9 by intervening in a private CFA action. See Kugler v. Romain, 58 N.J. 522, 535-41, 279 A.2d 640 (1971). Thus, the 1971 amendments to the CFA authorized defrauded consumers to bring private actions primarily for individual legal relief while continuing to confer authority and responsibility upon the Attorney General to seek equitable relief in the interests of the public at large. Therefore, even though the Legislature did not specifically refer to the right to a jury trial in the three-sentence provision authorizing private actions under the CFA, a legislative intent to allow jury trials can be reasonably implied from the fact that the relief authorized by this provision is legal in nature.
This conclusion is supported by the close relationship between the private cause of action authorized by N.J.S.A. 56:8-19 and common-law fraud. To establish a claim for common-law fraud, a plaintiff must demonstrate that:
(1) defendant made a material misrepresentation or omission of fact; (2) knowing the misrepresentation to be false or the omission to be material, and intending the other party to rely on it; and (3) the other party did in fact rely on the misrepresentation or omission to its detriment.
[Varacallo v. Mass. Mut. Life Ins. Co., 332 N.J.Super. 31, 43, 752 A.2d 807 (App.Div.2000).]
To establish a private CFA claim involving an omission of a material fact, a plaintiff must demonstrate that the defendant "concealed, suppressed or omitted a material fact, knowingly, and with the intent that others rely on the omission." Ibid. Thus, the elements of this form of CFA claim are identical to "the first two elements of common law fraud." Ibid. The only noteworthy difference between the causes of action is that "common law fraud requires proof of reliance while consumer fraud requires only proof of a causal nexus between the concealment of the material fact and the loss." Ibid.
Moreover, common-law fraud is not subsumed within a statutory consumer fraud action. See Kavky v. Herbalife Int'l of Am., Inc., 359 N.J.Super. 497, 500-09, 820 A.2d 677 (App.Div.2003); Union Ink Co., Inc. v. AT&T Corp., 352 N.J.Super. 617, 643-46, 801 A.2d 361 (App.Div.), certif. denied, 174 N.J. 547, 810 A.2d 66 (2002);
*323 Blatterfein v. Larken Assocs., 323 N.J.Super. 167, 171, 181-83, 732 A.2d 555 (App. Div.1999). Thus, as this case illustrates, a consumer may pursue claims for both common-law fraud and the statutory cause of action authorized by N.J.S.A. 56:8-19 for the same alleged wrongful conduct. There is an undisputed right to a jury trial in an action for common-law fraud, because this cause of action, sometimes referred to as "deceit," was recognized when our Constitution was adopted. See Prosser & Keeton on Torts, § 105 at 726-27 (5th ed.1984). Consequently, if there were no right to a jury trial in a private CFA action, a jury could be required to decide a consumer's common-law fraud claim while the trial court decided a CFA claim based on the same facts. In that event, there would be a risk that the jury and the trial court would make conflicting findings concerning a common factual issue. Cf. State v. Stanton, 176 N.J. 75, 117, 820 A.2d 637 (2003) (Albin, J., dissenting) (noting that "[t]here is no salutary purpose in the ... practice of two fact-findings, one by a jury and the other by a judge, in which both view the same evidence at the same trial."). Consequently, we are unwilling to attribute to the Legislature an intent to require bench trials of private claims under the CFA that substantially overlap and may be tried together with common-law fraud claims that are required to be tried before a jury.
Our conclusion that the Legislature contemplated that a party would be entitled to a jury trial in a private CFA action is also supported by thirty years of judicial administration of this remedy. Although there is no reported opinion determining that there is a right to a jury trial in a private action under the CFA, there are at least fifteen reported opinions involving CFA cases that were tried before a jury.[2] Furthermore, several of those opinions involved the adequacy of jury instructions. See, e.g., Wanetick, supra, 163 N.J. at 490-94, 750 A.2d 79; Chattin, supra, 243 N.J.Super. at 599-606, 581 A.2d 91. The number of private CFA actions that have been tried before a jury, without any question being raised concerning the right to a jury trial, indicates that a substantial segment of the bench and bar assumes there is a right to a jury trial. In fact, the trial of CFA actions before juries is so common that the Supreme Court Committee on Model Jury Charges, Civil, has approved model charges for use in such cases. Model Jury Charges (Civil) § 4.23 (May 1998). Consequently, if the Legislature did not intend to authorize jury trials *324 in private CFA actions, it had ample notice over the last thirty years of the common practice of trying such cases before juries to amend the law to clarify that intent. See Resnick v. East Brunswick Bd. of Educ., 77 N.J. 88, 101, 389 A.2d 944 (1978).
Accordingly, we conclude that there is a right to a jury trial in a private CFA action and that the trial court erred in treating the jury's verdict as advisory only. Furthermore, we are satisfied that the jury returned a valid verdict. The court never informed the jury it was giving consideration to treating its verdict as advisory only. In fact, the issue was not even raised until the close of plaintiff's case. The court did not resolve the issue at that point, and the rest of the case was tried as if the jury's verdict would be binding. Because the jury "never functioned as or was constituted or denominated as an advisory jury[,] ... there is no prejudice ... in accepting the jury's fact-finding as the final verdict." Almog v. Israel Travel Advisory Serv., Inc., 298 N.J.Super. 145, 160, 689 A.2d 158 (App. Div.1997), appeal dismissed, 152 N.J. 361, 704 A.2d 1297, cert. denied, 525 U.S. 817, 119 S.Ct. 55, 142 L.Ed.2d 42 (1998). The NHA does not question the sufficiency of the evidence to support the jury's verdict, and in any event we are satisfied there is sufficient evidence to sustain the verdict. Therefore, we reverse the judgment in the NHA's favor and dismiss its CFA claim.

II
The NHA's arguments in support of its cross-appeal were properly rejected by the motion and trial courts and only require brief discussion.
We affirm the dismissal of the NHA's negligence, strict liability and product liability claims substantially for the reasons expressed in Judge Longhi's oral opinion of February 21, 1992 in the centralized FRT Plywood litigation. See also Alloway v. General Mar. Indus., L.P., 149 N.J. 620, 626-43, 695 A.2d 264 (1997); Goldson v. Carver Boat Corp., 309 N.J.Super. 384, 394-99, 707 A.2d 193 (App.Div.1998). We affirm the summary judgments dismissing the NHA's breach of warranty claims against Osmose and Wood Treating substantially for the reasons expressed in Judge Longhi's written opinion of February 9, 1998. We also affirm the dismissal of NHA's warranty claims against Georgia-Pacific for those same reasons. Consequently, there is no need to consider the reasons set forth in the court's April 4, 1997 oral opinion.
We affirm the dismissal at the close of the NHA's case of the common-law fraud claim against Osmose substantially for the reasons expressed in the trial court's oral opinion of May 25, 1999. Moreover, even if the court had erred in dismissing the common-law fraud claim, the jury found that the consumer fraud committed by Osmose was not a proximate cause of the NHA's claimed damages. Although this finding was made with respect to the NHA's CFA claim, its common-law fraud claim would involve the same proximate causation issue. Therefore, under the doctrine of collateral estoppel, this jury finding would require dismissal of the common-law fraud claim even if the NHA had presented sufficient evidence to support a finding that Osmose's conduct was fraudulent. See In re Estate of Dawson, 136 N.J. 1, 20-21, 641 A.2d 1026 (1994).
Accordingly, we reverse the final judgment awarding the NHA $1,550,082.70 on its CFA claim against Osmose. We affirm the order of the trial court dismissing the NHA's common-law fraud claim and the pretrial orders dismissing the NHA's other claims.
NOTES
[1] After the Court decided Shaner, the Legislature amended the LAD to provide for a right to jury trial. L. 1990, c. 12, § 2; N.J.S.A. 10:5-13.
[2] See, e.g. Wanetick v. Gateway Mitsubishi, supra, 163 N.J. at 487, 750 A.2d 79; Cox v. Sears Roebuck & Co., 138 N.J. 2, 7, 647 A.2d 454 (1994); Cogar v. Monmouth Toyota, 331 N.J.Super. 197, 199, 751 A.2d 599 (App.Div. 2000); Mercer v. Weyerhaeuser Co., 324 N.J.Super. 290, 296, 735 A.2d 576 (App.Div. 1999); Helmar v. Harsche, 296 N.J.Super. 194, 196, 686 A.2d 766 (App.Div.1996); Silva v. Autos of Amboy, Inc., 267 N.J.Super. 546, 550, 632 A.2d 291 (App.Div.1993); Petrillo v. Bachenberg, 263 N.J.Super. 472, 475, 623 A.2d 272 (App.Div.1993), aff'd, 139 N.J. 472, 655 A.2d 1354 (1995); Performance Leasing Corp. v. Irwin Lincoln-Mercury, 262 N.J.Super. 23, 24, 619 A.2d 1024 (App.Div.), certif. denied, 133 N.J . 443, 627 A.2d 1148 (1993); Chattin, supra, 243 N.J.Super. at 595-604, 581 A.2d 91; DiNicola v. Watchung Furniture's Country Manor, 232 N.J.Super. 69, 70, 556 A.2d 367 (App.Div.), certif. denied, 117 N.J. 126, 564 A.2d 854 (1989); 49 Prospect St. Tenants Ass'n v. Sheva Gardens, Inc., 227 N.J.Super. 449, 457, 547 A.2d 1134 (App.Div.1988); DiBernardo v. Mosley, 206 N.J.Super. 371, 373, 502 A.2d 1166 (App.Div.), certif. denied, 103 N.J. 503, 511 A.2d 673 (1986); D'Ercole Sales, Inc. v. Fruehauf Corp., 206 N.J.Super. 11, 14, 501 A.2d 990 (App.Div.1985); Ramanadham v. N.J. Mfrs. Ins. Co., 188 N.J.Super. 30, 31, 455 A.2d 1134 (App.Div.1982); Martin v. Am. Appliance, 174 N.J.Super. 382, 383, 416 A.2d 933 (App.Div.1980); Knapp v. Potamkin Motors Corp., 253 N.J.Super. 502, 503, 602 A.2d 302 (Law Div.1991).