**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0073-24

RICHARD SCHIESS,

    Plaintiff-Respondent,

v.

THE ESTATE OF THERESA
WEBER and THE ESTATE
OF DENNIS WEBER,

    Defendants,

and

FRANCIS J. MCNEARY,

    Defendant-Appellant.

_____

Submitted March 5, 2026 – Decided April 8, 2026

Before Judges Marczyk and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-1511-20.

Francis J. McNeary, self-represented appellant.

Rutgers Law Associates, attorneys for respondent (Keerah D. McCratic, on the brief).

PER CURIAM

Defendant Francis J. McNeary appeals from the trial court's July 31, 2024 order setting aside a January 10, 2019 deed to real property, based on a jury verdict in favor of plaintiff Richard Schiess, finding fraud in the deed's execution. We affirm.

I.

This matter arises from a dispute regarding the alleged fraudulent transfer of title to a condominium unit located in Little Egg Harbor, after plaintiff, then seventy-seven years old, executed a deed in January 2019 that transferred his ownership of the unit to Theresa Weber and her husband, Dennis Weber.[1] Plaintiff had owned and lived in the condominium unit since 2003, having purchased it with his brother using the proceeds from the sale of their family home. Theresa, whom plaintiff had known since childhood, drove plaintiff to purchase the unit, was present for the sale, and paid the closing costs, but she did not contribute anything toward the purchase price. The 2003 deed listed plaintiff and Theresa as joint tenants with rights of survivorship. Plaintiff's

---

[1] Because Theresa Weber and Dennis Weber share a surname, we refer to them by their first names. No disrespect is intended.

brother was not listed on the deed due to concerns his declining health would impact his ability to retain ownership. Instead, Theresa was listed on the deed to ensure if anything happened to plaintiff, his brother would not be at risk of eviction from the property.

In August 2022, plaintiff filed an amended complaint against defendants the Estate of Theresa Weber,[2] the Estate of Dennis Weber, and McNeary,[3] the son of Theresa. Plaintiff's complaint asserted several claims against defendants, including fraudulent inducement in contract, fraud, and fraudulent misrepresentation to gain interest in property. Plaintiff also sought equitable relief, including the return of title to the property, and asserted a jury demand.

A jury trial was held over three consecutive days in July 2024. The parties were all represented by counsel. Plaintiff testified about the execution of the 2019 deed, explaining Theresa and Dennis came to his home unannounced one day, took him to TD Bank, and paid him ten dollars to sign documents he could

---

[2] Plaintiff amended the complaint to name the Estate of Theresa Weber as a defendant following her passing.

[3] Regarding McNeary's individual liability, the trial court found no evidence he was directly involved in any fraud, noting "[t]he only reason he's in this case . . . is because he has [a] . . . potential intestate interest[] in th[e] property" and if the jury found in plaintiff's favor, it would "affect [McNeary's] potential interest in th[e] property," which was why he was named alongside the Estates of Theresa and Dennis.

A-0073-24

not read. He asserted he later learned those documents had transferred ownership of his home to Theresa and Dennis. There were no attorneys present when the deed was transferred.

Plaintiff explained, after learning of the transfer, he went to the police station accompanied by his neighbor, Margery Perez. He stated he had been living in a nursing home since November 2022 and emphasized his desire to return home. Plaintiff testified he intended for his family in California to inherit the property upon his death. He also asserted he had never been declared incompetent and had always managed on his own and paid his own bills. Theresa contributed nothing to the condominium during the period he resided there.

Plaintiff also described the period following his brother's death in 2009, after which plaintiff jointly occupied the property with a friend, who contributed to the condominium's monthly utilities until the friend's passing in 2018. He asserted Theresa never told him anything about Section 8 benefits for government rental assistance. Plaintiff rarely saw Theresa, Dennis, or McNeary, estimating Theresa visited him only a handful of times over the sixteen years between the execution of the 2003 and 2019 deeds.

A-0073-24

Little Egg Harbor Township Police Officer Steven Martin testified regarding his investigation following plaintiff's visit to the police station. He interviewed both plaintiff and Theresa. Theresa informed him she had been friends with plaintiff since childhood and had assisted plaintiff throughout his life because he was illiterate or had learning disabilities and suffered from the beginnings of dementia. Theresa also said plaintiff wanted the property's title transferred to her so he could obtain Section 8 rental assistance. However, Officer Martin noted Theresa provided no documentation in support of this claim. On cross-examination, Officer Martin testified he believed plaintiff knew he was signing something pertaining to the condominium but did not know if plaintiff knew he was signing the deed. He also confirmed the Ocean County Prosecutor's Office (OCPO) had deemed the matter to be civil, rather than criminal. The OCPO declined to bring criminal charges against defendants because it concluded plaintiff had signed the deed willingly and found no evidence of financial fraud.

Officer Martin further testified plaintiff gave him a note allegedly written by a relative, which plaintiff asserted Theresa never responded to. Defense counsel objected to the testimony regarding the note and its admission. The court sustained the objection, ruling it constituted impermissible hearsay

5

evidence, but allowed Officer Martin to testify solely to the fact he had received the note from plaintiff. The court gave the jury a curative instruction to disregard any reference to the note's contents.

Defense counsel also objected to the admission of Officer Martin's police report. The court sustained the objection, ruling Officer Martin could use the report to refresh his recollection but the report itself could not be entered into evidence as it contained impermissible hearsay. Plaintiff's counsel also moved to admit a Zillow listing for the property, which defense counsel objected to, arguing the listing was irrelevant and Officer Martin lacked personal knowledge regarding who created or controlled the listing. The court sustained the objection.

Perez, who lived across the hall from plaintiff for over twenty-one years, testified about her relationship with him. She occasionally assisted plaintiff with reading his bills due to his illiteracy, noting he paid his routine bills via money orders. Perez stated plaintiff could not read or write well and often required help from friends and neighbors. She recalled learning of the 2019 deed transfer after plaintiff called her about receiving tax correspondence indicating his name was no longer listed on the deed. Perez explained she took

A-0073-24

plaintiff to the police station to report the incident. She asserted plaintiff believed he was signing insurance papers rather than a property deed.

McNeary testified he had no role in the 2019 deed transfer and did not know the details of what transpired at the bank. However, Theresa told him plaintiff's interest was transferred so she could help him pay his bills following the passing of his friend and brother. McNeary maintained he and Theresa paid all association and utility bills on the property since 2019, after plaintiff's finances no longer allowed him to do so. He also asserted nothing prevented plaintiff from returning to the property if he were released from the nursing home.

On July 31, 2024, the jury, by a vote of six to one, issued a verdict finding plaintiff had proven by clear and convincing evidence "the deed he signed on January 10, 2019[,] was a result of fraud perpetrated upon him by one or more of the defendants." Accordingly, the trial court ordered "[t]he January 10, 2019 [d]eed listing Dennis . . . and Theresa . . . as title holders" to the condominium be set aside "due to the jury's finding of fraud in the execution." It further discharged any and all of defendants' rights to the property. On February 13, 2025, the court entered an order granting plaintiff the legal right to the property and "granted quiet title to the property."

A-0073-24

II.

An appellate court reviews a "trial court's evidentiary rulings . . . [']under the abuse of discretion standard because, from its genesis, the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion.'" State v. Prall, 231 N.J. 567, 580 (2018) (quoting Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010)). An abuse of discretion occurs when a trial court's decision "was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment." Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005). An improper evidentiary ruling calls for reversal if it "is 'so wide of the mark' that it constitutes 'a clear error in judgment,'" State v. Garcia, 245 N.J. 412, 430 (2021) (quoting State v. Medina, 242 N.J. 397, 412 (2020)), such that it is "clearly capable of producing an unjust result," Manata v. Pereira, 436 N.J. Super. 330, 349 (App. Div. 2014) (quoting R. 2:10-2).

When no objection is made to the admission of evidence, but it is challenged on appeal, the plain error standard applies. See R. 2:10-2; State v. Santamaria, 236 N.J. 390, 404-05 (2019). Plain error is a "high bar" to clear. Santamaria, 236 N.J. at 404. "[T]he error will be disregarded unless a reasonable doubt has been raised whether the jury came to a result that it otherwise might

8

not have reached." State v. Singh, 245 N.J. 1, 13 (2021) (quoting State v. R.K., 220 N.J. 444, 456 (2015)). In civil cases, relief under the plain error rule "is discretionary and 'should be sparingly employed.'" Cavuoti v. N.J. Transit Corp., 161 N.J. 107, 129 (1999) (quoting Ford v. Reichert, 23 N.J. 429, 435 (1957)); see also Bldg. Materials Corp. of Am. v. Allstate Ins. Co., 424 N.J. Super. 448, 487 n.14 (App. Div. 2012).

Regarding issues of equitable relief, "the court retains wide discretion in fashioning its contents and determining its breadth and scope." Stoney v. Maple Shade Twp., 426 N.J. Super. 297, 313 (App. Div. 2012); see also In re Resol. of the State Comm'n of Investigation, 108 N.J. 35, 46 (1987) (recognizing an equitable remedy is granted within the court's discretion). Consequently, we review such decisions for an abuse of discretion standard. Stoney, 426 N.J. Super. at 307. However, where the disputed equitable issue is a question of law, our review is de novo. Regalado v. Curling, 430 N.J. Super. 342, 345 (App. Div. 2013).

A.

McNeary argues the trial court erred in allowing Officer Martin to testify regarding his investigation into the execution of the 2019 deed. He contends Officer Martin's testimony was not materially relevant and was substantially

9

more prejudicial than probative because "[t]here was no logical connection between [his] investigation and what transpired at TD Bank" in 2019. He asserts Officer Martin's testimony gave the jury the impression charges were not filed only because the reasonable doubt standard could not be satisfied. McNeary insists this testimony amounted to "back[d]oor[,] inadmissible opinion testimony."

McNeary also claims Officer Martin's testimony contained a "great deal of hearsay and self-serving statements made by . . . plaintiff and others." He further asserts, "[s]uch self-serving statements are not admissible," citing Dolan v. Chesler, 5 N.J. Super. 313 (App. Div. 1949).

Only relevant evidence is admissible. N.J.R.E. 402. "'Relevant evidence' means evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. The test for relevance is broad and generally favors admissibility. State v. Deatore, 70 N.J. 100, 116 (1976). "The burden of establishing this connection is not onerous: 'if the evidence makes a desired inference more probable than it would be if the evidence were not admitted, then the required logical connection has been satisfied.'" State v. Garrison, 228 N.J. 182, 195 (2017) (quoting State v. Williams, 190 N.J. 114, 123 (2007)). However, "relevant evidence may be

10

excluded if its probative value is substantially outweighed by the risk of . . . [u]ndue prejudice, confusion of issues, or misleading the jury." N.J.R.E. 403(a). The burden rests upon the opposing party to demonstrate the risk of undue prejudice outweighs the probative value. Rosenblit v. Zimmerman, 166 N.J. 391, 410 (2001).

Having considered McNeary's arguments and the applicable law, we discern no basis to disturb the trial court's evidentiary rulings regarding Officer Martin's testimony, let alone plain error. Defense counsel raised several objections throughout Officer Martin's testimony about leading, narrative, and cumulative questions, as well as to the admissibility of the note allegedly from plaintiff's relative, the police report, and the Zillow listing for the property. The record demonstrates the court promptly ruled on those objections, sustaining the majority, including defense counsel's hearsay objections to the note and police report.

Notably, the record does not reflect that McNeary objected to the relevance of Officer Martin's testimony regarding his investigation or the OCPO's decision not to pursue criminal charges against defendants. Given defense counsel's other objections to Officer Martin's testimony, counsel's failure to make this particular objection "suggests that counsel 'perceived no

11

error or prejudice, and, in any event, prevented the trial judge from remedying any possible confusion in a timely fashion.'" See DiMaria Constr., Inc. v. Interarch, 351 N.J. Super. 558, 570 (App. Div. 2001) (quoting Bradford v. Kupper Assocs., 283 N.J. Super. 556, 573-74 (App. Div. 1995)). In any event, even under the plain error standard, we are unconvinced the admission of the challenged testimony led to an unjust result.[4] R. 2:10-2.

We are unpersuaded by McNeary's contention there was "no logical connection" between Officer Martin's investigation and the events that transpired at TD Bank when the 2019 deed was executed. In his summation, defendants' trial counsel referred to Officer Martin's testimony in arguing plaintiff willfully signed the deed, stating:

> And the police officer, [O]fficer . . . Martin . . . doesn't have a pony in this race. I think we can all agree he's an independent observer. He's investigated elder abuse, fraud, those sorts of things. H[e] and his partner interviewed all the relevant parties to this [action]. And what was his conclusion? That [plaintiff] willfully signed the deed. That was his independent determination, his conclusion based upon the information he received. [Plaintiff] willingly signed the deed. How can it be fraud? [Plaintiff] . . . read the

---

[4] In contending these issues were raised before the trial court, McNeary cites a pretrial motion in which defendants "object[ed] to testimony by Officers Mancini and Dietrick." However, there is nothing in the record reflecting how or if the court ruled on the motion, and the motion did not mention Officer Martin.

word[] deed. He knew what he was signing. He wasn't defrauded [and] he wasn't put out on the street.

Thus, as defense counsel argued, Officer Martin's testimony regarding his investigation was relevant, because it made it more probable plaintiff knew what he was signing, such that the 2019 deed was not fraudulently executed.

The testimony was also relevant from plaintiff's perspective to corroborate he was surprised to learn the deed to his condominium had been transferred to Theresa, unbeknownst to him. Accordingly, he sought assistance from the police. Additionally, most of Officer Martin's testimony regarding the decision of the OCPO to not bring criminal charges was elicited during cross-examination by defense counsel. In fact, defendants' trial counsel expressly elicited Officer Martin's agreement regarding probable cause being a "fairly low threshold" to bring criminal charges, as opposed to the beyond a reasonable doubt burden of proof at trial. As to McNeary's contention regarding Officer Martin's inadmissible "back[d]oor . . . opinion testimony," defense counsel also explicitly asked Officer Martin to confirm it was his "opinion that the [OCPO] determined that th[e] lower threshold [of probable cause] was not satisfied." Thus, Officer Martin's testimony did not leave the impression criminal charges had not been filed because the reasonable doubt standard could not be met but, rather, because

13

the lesser standard of probable cause could not be satisfied, which reinforced the defense's position the deed was not fraudulently executed.

Moreover, "strategic reasons can be inferred from [defense] counsel" questioning Officer Martin regarding these topics during cross-examination, and counsel's failure to object to his testimony "suggests that it was not perceived to be as fatal as is now argued." See T.L. v. Goldberg, 238 N.J. 218, 232 (2019); Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 523 (second alteration in original) ("[T]he '[f]ailure to make a timely objection indicate[d] that defense counsel did not believe the remarks were prejudicial at the time they were made.'" (quoting Jackowitz v. Lang, 408 N.J. Super. 495, 505 (App. Div. 2009))). Accordingly, absent plain error, of which there is none here, McNeary is not entitled to relief from the consequences of his chosen trial strategies. See T.L., 238 N.J. at 232.

Although McNeary's brief does not clearly identify exactly which portions of Officer Martin's testimony he challenges as impermissible hearsay, we glean that he objects to the testimony regarding the handwritten note allegedly from plaintiff's relative. While the court initially permitted Officer Martin, over defense counsel's objection, to testify as to whether he received the note from plaintiff during the course of his investigation, it subsequently sustained defense

14

counsel's objection to his testimony regarding plaintiff's statements the note was "written for him by his nephew's father" and that Theresa never responded to it. Thus, contrary to McNeary's assertion defense counsel's objections and requests were not "heeded," the court: excluded the note as impermissible hearsay; granted defense counsel's request for a curative instruction; and instructed the jury to "disregard" the "couple of snippets about what may or may not have been [i]n th[e] note" and stated "the[re would] be no more about th[e] note." Accordingly, the court did not misapply its discretion, as its subsequent ruling and curative instruction negated any potential prejudice McNeary may have suffered.

B.

McNeary next contends the trial court improperly relied on an advisory verdict with neither a motion before it to do so nor his consent pursuant to Rule 4:35-2, which governs the use of advisory juries. He maintains he did not consent to allowing the jury to decide the equitable issue of whether to set aside the 2019 deed and argues the elevation of the jury's advisory verdict to a binding verdict violated his procedural due process rights and prejudiced him. McNeary asserts his consent could not be inferred from his failure to object to the use of an advisory verdict. Additionally, he claims "the trial judge had indicated that

A-0073-24

he would have found for the defense" but does not point us to support for this contention in the record.

McNeary did not raise this argument before the trial court. "Generally, an appellate court will not consider issues, even constitutional ones, which were not raised [before the trial court]." State v. Galicia, 210 N.J. 364, 383 (2012). Appellate courts do not "consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)). This appeal involves neither an issue regarding jurisdiction nor a matter of great public importance warranting departure from this general rule.

Nevertheless, even if the issue had been properly raised, we are unpersuaded by McNeary's arguments. Rule 4:35-2 provides:

> The court on motion or its own initiative may try with an advisory jury any issue not triable of right by a jury, or it may, with the consent of all parties appearing at the trial, order a trial of any such issue with a jury whose verdict has the same effect as if trial by jury had been a matter of right.
>
> [(Emphasis added).]

A-0073-24

The jury neither issued an advisory verdict nor decided an issue of equity. Rather, there was a right to a jury trial on plaintiff's common-law fraud claim, which was the sole issue submitted to the jury. See Zorba Contractors, Inc. v. Hous. Auth. of Newark, 362 N.J. Super. 124, 139 (App. Div. 2003) ("There is an undisputed right to a jury trial in an action for common-law fraud . . . ."). That issue was properly submitted to the jury, as plaintiff asserted a jury demand in his complaint, and accordingly, the jury returned a binding verdict in plaintiff's favor. See R. 4:35-1(d) (explaining when a jury trial has been demanded "the trial of all issues . . . shall be by jury, unless all parties . . . consent to trial by the court without a jury, or unless . . . a right of trial by jury of some or all of those issues does not exist").

The trial court never informed the jury it was considering its verdict as advisory only, and the case was tried as if the jury's verdict would be binding. Thus, "[b]ecause the jury 'never functioned as or was constituted or denominated as an advisory jury[,] . . . there is no prejudice . . . in accepting the jury's fact-finding as the final verdict.'" See Zorba, 362 N.J. Super. at 141 (quoting Almog v. Israel Travel Advisory Serv., Inc., 298 N.J. Super. 145, 160 (App. Div. 1997)).

17

A-0073-24

Lastly, once the jury performed its function in deciding the fraud issue, the court appropriately fashioned an equitable remedy to reconvey the deed to plaintiff. That is, once a trial court is vested with jurisdiction over a legal claim, it may grant the necessary equitable relief to resolve the dispute. See Donnelly v. Ritzendollar, 14 N.J. 96, 104 (1953).

To the extent we have not specifically addressed any remaining arguments raised by McNeary, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

18

A-0073-24