59 A.3d 561

JERSEY CENTRAL POWER & LIGHT COMPANY (A FIRST ENER-
GY COMPANY), PLAINTIFF–APPELLANT, v. MELCAR UTILI-
TY COMPANY, DEFENDANT/THIRD PARTY PLAINTIFF–RE-
SPONDENT, AND VERIZON OF NEW JERSEY, DEFENDANT,
v. UTILIQUEST, THIRD PARTY DEFENDANT–RESPONDENT.

Argued November 29, 2011—Decided January 24, 2013.

*Daniel F. Sahin* argued the cause for appellant.

*Robert G. Feldman* argued the cause for respondent Melcar Utility Company (*Dennis J. Crawford*, attorney).

*Charles B. Austermuhl* argued the cause for respondent Utili-quest (*Richardson & Galella,* attorneys).

*Geoffrey R. Gersten,* Deputy Attorney General, submitted a brief on behalf of amicus curiae State of New Jersey (*Jeffrey S. Chiesa,* Attorney General of New Jersey, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel; *Mr. Gersten* and *Elise W. Goldblat,* Deputy Attorney General, on the brief).

PER CURIAM.

*N.J.S.A.* 48:2–80(d), a provision appearing in the Underground Facility Protection Act (UFPA), *N.J.S.A.* 48:2–73 to –91, compels parties seeking monetary relief for damages to underground facilities to submit such causes of action, if valued under a specified amount, to the Office of Dispute Settlement (ODS) within the Office of the Public Defender for unspecified "dispute resolution." On its face, the provision fails to preserve a party's ability to have the property damage dispute remain within or return to a judicial setting. It was applied in this matter to compel the dismissal of a Superior Court action for property damage to underground facilities covered by the UFPA.

The essential issue is whether *N.J.S.A.* 48:2–80(d), as written, impinges on the constitutional right to a jury trial for property damages. We conclude that it does and therefore reverse the judgment that dismissed the Superior Court action for want of jurisdiction.

I.

This case comes before us with the following factual and procedural background. Plaintiff Jersey Central Power & Light Company (JCP&L), a public utility subject to the jurisdiction and authority of the Board of Public Utilities under *N.J.S.A.* 48:2–13(a), generates and distributes electric power throughout various areas of New Jersey. When feasible, JCP&L, like many utilities, places facilities such as transmission lines and stations below ground where they are not visible. Underground placement pro-

tects against storm-related damage, thereby preventing interruptions in service to customers, and provides aesthetic benefits. However, underground placement also poses hazards to those who may be unaware of the presence of such underground facilities and those who may not take sufficient steps to prevent damage to the facilities of which they are aware.

Recognizing the potential hazards posed by such underground facilities, the Legislature enacted the UFPA to protect both the public from the risk of harm and the utility companies from unnecessary losses. The statute creates a "One–Call Damage Prevention System" (System), which is designed to serve as a central repository for the receipt of notices of intent to excavate, from which the notices are forwarded to the appropriate utility. *N.J.S.A.* 48:2–76. The UFPA requires that such notices of intent be given to the System not less than three business days prior to the commencement of any excavation or demolition. *N.J.S.A.* 48:2–82. The UFPA also requires that, within three days of receipt of a notice of intent, an operator of an underground facility "[m]ark, stake, locate or otherwise provide the position and number of its underground facilities which may be affected by a planned excavation or demolition." *N.J.S.A.* 48:2–80(a)(2).

The UFPA carries significant penalties for those who disregard its mandates. An operator or excavator who violates the statute is liable for a civil penalty, imposed by the Board of Public Utilities, of not less than $1,000 and not greater than $2,500 for each day the violation continues, with a maximum of $25,000 in the case of a series of related violations. *N.J.S.A.* 48:2–88. If the violation relates to a natural gas or hazardous liquid underground pipeline or distribution facility, the penalty increases to not more than $100,000 per day, or $1,000,000 for any related series of violations. *N.J.S.A.* 48:2–86(c). *N.J.S.A.* 48:2–86(d) provides for the pursuit of civil penalties and expressly authorizes the simultaneous pursuit of administrative and judicial remedies for the damages incurred to underground facilities. *See also N.J.S.A.* 48:2–88(b) ("Nothing in this act shall affect any civil remedy for damage to an opera-

tor's underground facility or for actual damage to any person's property."). Further, a knowing violation of the statute may constitute either a disorderly persons offense or a third-degree crime, depending on the extent of the damage caused by the violation. *N.J.S.A.* 48:2–87.

Against that backdrop, subsection (d) of *N.J.S.A.* 48:2–80 draws our specific attention. The Legislature added this subsection in 2005. *L.* 2005, *c.* 22, § 2. The subsection provides that if an operator of an underground facility, upon receipt of notice of a proposed excavation, does not comply with its obligation to mark or locate the number and position of its underground facilities, the underground facility operator shall be liable to the excavator "for any costs, labor, parts, equipment and personnel downtime" that an excavator may incur as a result of damage to the excavator's equipment. Thus, subsection (d) imposes damages on the operator of underground facilities, to be paid to excavators, for a failure to comply with the marking and locating duty that the UFPA imposes.

In addition, and most specifically pertinent to our analysis, subsection (d) also imposes liability on the excavator for any negligent damage to an operator's underground facility. Mirroring the language addressing loss to the excavator, the provision makes the excavator "liable for any costs, labor, parts, equipment and personnel downtime [ ] incurred by the underground facilities operator." The underground operator's property damage plainly is included within the ambit of losses addressed by subsection (d). The problem with subsection (d)'s inclusion of losses suffered by an underground facility operator due to an excavator's negligence is the method that the Legislature has prescribed for the resolution of such disputes. Subsection (d) concludes with the following directory language:

Any dispute arising from the provisions of this subsection, where the claim is less than $25,000, shall be subject to an alternative dispute resolution process as established within the Office of Dispute Settlement in the Office of the Public Defender. Nothing in this act shall be construed to discourage parties from pursuing alternative dispute resolution processes for an amount greater than

$25,000. The parties may by mutual agreement designate another alternative dispute resolution association for all matters.

The instant matter concerns underground electrical lines owned by JCP&L in the vicinity of Robin Street in Rockaway, New Jersey. In September 2007, defendant Melcar Utility Company (Melcar) performed excavation work in the area of Robin Street for the purpose of installing underground cables for Verizon of New Jersey (Verizon). During the course of that excavation work, JCP&L's underground electrical lines were damaged. In January 2009, JCP&L filed a complaint against Melcar and Verizon in the Special Civil Part of the Law Division, seeking reimbursement for costs incurred in repairing those electrical lines. Melcar filed a third-party complaint against Utiliquest, an entity contracted by JCP & L to mark the location of JCP&L's underground electrical lines, alleging that Utiliquest failed to properly mark the lines' location and, thus, was responsible for JCP&L's loss.

On the day set for trial before the Special Civil Part, Melcar's attorney made an oral motion to dismiss the matter for lack of jurisdiction, citing *N.J.S.A.* 48:2–80(d). Melcar argued that under subsection (d) the matter had to be heard by the ODS. JCP&L objected to the motion on procedural, and substantive jurisdictional, grounds. The trial court adjourned the case to afford JCP&L's attorney an opportunity to prepare a response to the motion. After the jurisdictional question was briefed and argued, the court granted the motion and entered an order dismissing JCP&L's complaint without prejudice. The court also denied JCP&L's motion for reconsideration.

JCP&L appealed, and in a short, unpublished opinion the Appellate Division affirmed the trial court's order. We granted JCP&L's petition for certification. 205 *N.J.* 318, 15 *A.*3d 326 (2011). After this matter was argued, we invited the Attorney General of New Jersey to submit a brief addressing the constitutionality of *N.J.S.A.* 48:2–80(d), and we provided the parties an opportunity to submit responding briefs.

## II.

There are several aspects to JCP&L's argument that its complaint seeking damages should not have been dismissed for lack of jurisdiction. It contends that *N.J.S.A.* 48:2–80(d) does not require that claims valued at less than $25,000 be submitted to the ODS, but rather makes it permissible for the parties to submit to that dispute resolution forum. Alternatively, according to JCP&L, if subsection (d) is interpreted as mandating resort to the ODS in those instances, the provision is unconstitutional.

JCP&L advances several reasons to support its argument that the statute is irretrievably flawed. It initially points to the fact that, although the ODS offers both mediation and arbitration services, the ODS has determined that parties with disputes arising under subsection (d) must submit those disputes to arbitration. As the appeal has progressed, we are informed that the ODS now mandates arbitration as its final means of dispute resolution for the subsection (d) matters sent to it by the Legislature.[1] Regardless of this recent turn of events, JCP&L maintains that arbitration must be consensual, except where the Legislature may direct the form of alternative dispute resolution because the constitutional right to jury trial is not implicated. Here, JCP&L claims that the constitutional right is implicated because of the underlying common-law nature of the property damage claim. JCP&L's additional arguments constitute permutations on its theme.

Melcar and Utiliquest respond by asserting, first, that participation before the ODS is mandatory for parties with claims under *N.J.S.A.* 48:2–80(d). They also contend that the ODS is authorized to compel the parties to participate in arbitration proceedings.

---

[1] *See* Office of the Public Defender, Office of Dispute Settlement, Underground Facility Protection Act, Underground Facility Protection Act Dispute Resolution Procedure, http://www.state.nj.us/defender/UndergroundFacilityProtectionAct. pdf (last visited Jan. 16, 2013). JCP&L also claimed unfairness due to the ODS's failure to adopt any rules or regulations formally establishing the procedures to be followed.

In support of that proposition, they cite *Rule* 4:21A–1 as an example of parties being directed to participate in arbitration. They assert that JCP&L's argument—that the statute deprives it of its constitutionally guaranteed right to a jury trial—is meritless because JCP&L failed to seek a jury when it filed its complaint in the Special Civil Part. And, they point out that the ODS has posted the procedures that it employs on the website of the Office of the Public Defender, satisfying any notice obligation to affected parties.

The Attorney General echoes the arguments of respondents Melcar and Utiliquest. He maintains that referral to the ODS is both mandatory and constitutional. He also argues that if the failure to promulgate rules in accordance with the Administrative Procedures Act, *N.J.S.A.* 52:14B–1 to –15; is viewed as a potentially fatal defect, the ODS should be allowed to issue conforming rules.[2]

## III.

We turn first to JCP&L's argument that the statute, properly construed, provides for the discretionary referral of disputes involving property damage to underground facilities to the ODS.

Analysis of this contention must abide by certain fundamental principles. "When called on to interpret a statute, 'our overriding goal must be to determine the Legislature's intent.' " *Cast Art Indus., LLC v. KPMG LLP*, 209 *N.J.* 208, 221, 36 *A.*3d 1049 (2012) (quoting *State v. Gonzalez*, 142 *N.J.* 618, 627, 667 *A.*2d 684 (1995)). Our role "is to determine and effectuate the Legisla-

---

[2] During the pendency of this action, the ODS initiated the rulemaking process under the Administrative Procedure Act by filing a rule proposal. *See* Alternative Dispute Resolution Process for Underground Facility Protection Act Damages Claims, 44 *N.J.R.* 3056 (proposed Dec. 17, 2012) (to be codified at *N.J.A.C.* 17:39); Alternative Dispute Resolution Process for Underground Facility Protection Act Damages Claims, 44 *N.J.R.* 1191(a) (pre-proposed Apr. 16, 2012) (to be codified at *N.J.A.C.* 17:39).

ture's intent." *Bosland v. Warnock Dodge, Inc.*, 197 *N.J.* 543, 553, 964 *A.*2d 741 (2009).

In performing that duty, our search begins with the plain language of the statute. *N.J. Div. of Youth & Family Servs. v. T.B.*, 207 *N.J.* 294, 302, 24 *A.*3d 290 (2011); *State v. Hupka*, 203 *N.J.* 222, 231–32, 1 *A.*3d 640 (2010). A court must "look first to the plain language of the statute, seeking further guidance only to the extent that the Legislature's intent cannot be derived from the words that it has chosen." *Pizzullo v. N.J. Mfrs. Ins. Co.*, 196 *N.J.* 251, 264, 952 *A.*2d 1077 (2008). The statute's words deserve to be given "their ordinary meaning and significance," *DiProspero v. Penn*, 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005), and a court may not "presume that the Legislature intended something other than that expressed by way of the plain language," *O'Connell v. State*, 171 *N.J.* 484, 488, 795 *A.*2d 857 (2002).

Another important guidepost is the bedrock assumption that the Legislature did not use "any unnecessary or meaningless language," *Patel v. N.J. Motor Vehicle Comm'n*, 200 *N.J.* 413, 418–19, 982 *A.*2d 445 (2009), so a court "should try to give effect to every word of [a] statute.... [rather than] construe [a] statute to render part of it superfluous," *Med. Soc'y of N.J. v. N.J. Dep't of Law & Pub. Safety, Div. of Consumer Affairs*, 120 *N.J.* 18, 26–27, 575 *A.*2d 1348 (1990) (citations omitted). Accordingly, " '[w]e must presume that every word in a statute has meaning and is not mere surplusage.' " *Cast Art, supra*, 209 *N.J.* at 222, 36 *A.*3d 1049 (quoting *In re Attorney General's "Directive on Exit Polling: Media & Non–Partisan Pub. Interest Grps."*, 200 *N.J.* 283, 297–98, 981 *A.*2d 64 (2009)).

Applying those principles, we cannot otherwise conclude but that the Legislature intended that all subsection (d) matters involving damages to underground facilities totaling less than $25,000 must be referred to the ODS. Nothing in the provision suggests that referral to the ODS is discretionary. We reach this conclusion for several reasons, not the least of which is the Legislature's choice of the word "shall," which is ordinarily intend-

ed to be mandatory, not permissive. *See, e.g., Aponte–Correa v. Allstate Ins. Co.*, 162 *N.J.* 318, 325, 744 *A.*2d 175 (2000) ("Under the 'plain meaning' rule of statutory construction, the word 'may' ordinarily is permissive and the word 'shall' generally is mandatory."); *Quereshi v. Cintas Corp.*, 413 *N.J.Super.* 492, 498, 996 *A.*2d 465 (App.Div.2010) (same); *O'Shea v. Twp. of W. Milford*, 410 *N.J.Super.* 371, 383, 982 *A.*2d 459 (App.Div.2009) (same).

Further, we agree with the Appellate Division that the phrase "shall be subject to" must be read as mandatory if we are to give effect to the entire provision. The penultimate sentence of *N.J.S.A.* 48:2–80(d) supports this conclusion: "Nothing in this act shall be construed to discourage parties from pursuing alternative dispute resolution processes for an amount greater than $25,000." The Legislature spoke plainly in creating two categories of disputes, mandating alternative dispute resolution for claims valued at less than $25,000 and permitting alternative dispute resolution for claims valued at more than $25,000. *See Aponte–Correa, supra*, 162 *N.J.* at 325, 744 *A.*2d 175 ("Where a statutory provision contains both the words 'may' and 'shall,' it is presumed that the lawmaker intended to distinguish between them, 'shall' being construed as mandatory and 'may' as permissive."). Further, the provision's last sentence states that the parties may agree to select another alternative dispute resolution forum. Because parties may always agree to participate in alternative dispute resolution, this sentence would be meaningless if the earlier portions of the statute were read as merely permitting the parties to use the services of the ODS. *See In re Sussex Cnty. Mun. Utils. Auth.*, 198 *N.J.Super.* 214, 217, 486 *A.*2d 932 (App.Div.) (noting that "legislative language must not, if reasonably avoidable, be found to be inoperative, superfluous or meaningless" (internal quotations omitted)), *certif. denied*, 101 *N.J.* 267, 501 *A.*2d 934 (1985).

Thus, the statute, read as a whole, manifests an unmistakable legislative intent that parties with claims of damage to underground facilities valued at less than $25,000 must present those claims to the ODS, unless the parties mutually agree upon a

different forum for dispute resolution. The Legislature's language leaves no doubt that its intent was to ensure that all such claims, and the dispute resolution work involved, would flow to the ODS unless the parties agreed to send the matter to an alternative dispute resolution tribunal.

That being clear, we turn to JCP&L's claim that the statute on its face constitutes a deprivation of the constitutional right to a jury trial for a property damage claim codified into subsection (d).

## IV.

Our State Constitution guarantees that the "right of trial by jury shall remain inviolate." *N.J. Const.* art. I, ¶ 9. It is well-established that this protection applies to civil cases only where the right to a jury trial existed at common law and does not normally apply to cases in equity. *See Weinisch v. Sawyer,* 123 *N.J.* 333, 343, 587 *A.*2d 615 (1991) (guaranteeing jury trial right "only to the extent that it existed at common law when the New Jersey Constitution was adopted"). "Only those actions that triggered the right of a jury trial that predated our State Constitutions, and those that were created anew with enactment of New Jersey's 1776 Constitution, the 1844 Constitution, or the 1947 Constitution serve as the basis for that constitutional right today." *Ins. Co. of N. Am. v. Anthony Amadei Sand & Gravel, Inc.,* 162 *N.J.* 168, 175–76, 742 *A.*2d 550 (1999) (citations omitted).

When determining if a jury trial is required under the State Constitution, both the historical basis of the cause of action and the relief sought must be considered. *Steiner v. Stein,* 2 *N.J.* 367, 379–80, 66 *A.*2d 719 (1949); *Triffin v. Automatic Data Processing, Inc.,* 411 *N.J.Super.* 292, 310–11, 986 *A.*2d 8 (App.Div. 2010). The remedy sought "remains the most persuasive factor." *Weinisch, supra,* 123 *N.J.* at 344, 587 *A.*2d 615.[3]

---

[3] Interestingly, our courts have concluded that injured parties seeking equitable remedies may be entitled to a jury trial in very limited instances—only

■ That said, only the Legislature can confer litigants with a right to a trial by jury if the action did not exist at common law. *See State v. Sailor,* 355 *N.J.Super.* 315, 322, 810 *A.2d* 564 (App. Div.2001) ("When the Legislature wants to provide for the right to a jury trial, it has done so by express provision."). Thus, in *Sailor,* it was observed that "since 1951, the right to a jury trial for newly created statutory causes of action has been denied unless the statute so provides." *Id.* at 320, 810 *A.2d* 564 (citing *Montclair v. Stanoyevich,* 6 *N.J.* 479, 494, 79 *A.2d* 288 (1951) (holding that convictions before magistrates for small criminal offenses were unknown at common law and therefore defendant had no right to jury trial)). In our comprehensive discussion of the right to a jury trial in connection with a statutory cause of action in *Shaner v. Horizon Bancorp,* we catalogued cases demonstrating that the ratification of the 1947 New Jersey Constitution marked the point, since which

> courts have been consistent in denying a right to jury trial for newly-created statutory causes of action. *See N.J. Sports & Exposition Auth. v. Del Tufo,* 210 *N.J.Super.* 664 [510 *A.2d* 329] (Law Div.1986), *aff'd,* 230 *N.J.Super.* 616 [554 *A.2d* 878] (App.Div.1989) (no right to jury trial in stockholders' action to determine fair value of their shares because proceeding was statutory rather than contractual); *Manetti v. Prudential Property & Casualty Ins. Co.,* 196 *N.J.Super.* 317, 320–21 [482 *A.2d* 520] (App.Div.1984) (no right to jury trial for statutorily-created "PIP" benefits, which are granted according to principles of statutory construction, not contract); *State v. Tenriero,* [ ] 183 *N.J.Super.* 519 [444 *A.2d* 623 (LawDiv.1981)] (no right to jury trial for gambling offenses under statute giving jurisdiction to Superior Court); *Van Dissel v. Jersey Cent. Power & Light Co.,* 181 *N.J.Super.* 516 [438 *A.2d* 563] (App.Div.1981) (no right to jury trial for inverse condemnation action since this right arises under state Constitution and statute, and is, therefore, foreign to the common law), *certif. den.,* 89 *N.J.* 409 [446 *A.2d* 142] (1982), *granted and vacated on other grounds,* 465 *U.S.* 1001, 104 *S.Ct.* 989, 79 *L.Ed.2d* 224, *on remand,* 194 *N.J.Super.* 108, 122–23 [476 *A.2d* 310] (App.Div.) (conclusion on jury

instances in which the substantive nature of the claim is based on common-law principles. *See e.g., Wood v. N.J. Mfrs. Ins. Co.,* 206 *N.J.* 562, 576–79, 21 *A.3d* 1131 (2011) (requiring jury trial in insurer-insured dispute despite their fiduciary relationship, which normally implicates action in equity, because of common-law contract principles at dispute's core); *State v. One 1990 Honda Accord,* 154 *N.J.* 373, 393, 712 *A.2d* 1148 (1998) (requiring jury trial despite forfeiture remedy's nonexistence at common law and cause of action's creation by statute because forfeiture is rooted in common-law principles).

issue undisturbed), *certif. denied,* 99 *N.J.* 186 [491 *A.*2d 690] (1984); *Peterson v. Albano,* 158 *N.J.Super.* 503 [386 *A.*2d 873] (App.Div.1978) (no right to jury trial in summary dispossess action because it is statutory), *certif. den.,* 78 *N.J.* 337 [395 *A.*2d 205] (1978); *Quinchia v. Waddington,* 166 *N.J.Super.* 247, 249 [399 *A.*2d 679] (Law Div.1979) (no right to jury trial to recover from Unsatisfied Claim and Judgment Fund since right was new substantive right that vested by statute and was foreign to the common law; "[a]bsent legislative mandate, the right of trial by jury is confined to those matters in which it existed under the common law."); *Kugler v. Banner Pontiac–Buick, Opel, Inc.,* 120 *N.J.Super.* 572[, 582, 295 *A.*2d 385] (Ch.Div.1972) (no right to jury trial for prosecution under Consumer Fraud Act where statutory action was "completely unknown" to common law).

[116 *N.J.* 433, 448–49, 561 *A.*2d 1130 (1989).]

█ In *Shaner, supra,* we reviewed whether litigants were entitled to a trial by jury under New Jersey's Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 to –42. *Id.* at 450–52, 561 *A.*2d 1130. We reiterated that "where actions created by statute have distinctive features with respect to substantive and procedural standards that would render them virtually unknown to the common law, there is no right to jury trial." *Id.* at 451, 561 *A.*2d 1130. Despite acknowledging that "a grievance based on discrimination constitutes or is similar to a tort action[,] ... LAD claims do not supplant claims that might be cognizable by our courts in contract or tort for wrongful discharge." *Id.* at 452–53, 561 *A.*2d 1130. We reasoned, "[b]ecause an action under the LAD is distinctively oriented to the achievement of the broad objectives of that law, we are not persuaded that 'the action involves rights and remedies of the sort typically enforced in an action at law' and that there is 'no functional justification for denying the jury trial right.'" *Id.* at 453, 561 *A.*2d 1130 (quoting *Curtis v. Loether,* 415 *U.S.* 189, 195, 94 *S.Ct.* 1005, 1009, 39 *L.Ed.*2d 260, 267 (1974)). The *Shaner* Court concluded and held that there was no right to a jury trial under the LAD. *Id.* at 455, 561 *A.*2d 1130.[4]

---

[4] The Legislature amended the LAD thereafter to provide the right to a jury trial. *L.* 1990, *c.* 12, § 2 (codified as amended at *N.J.S.A.* 10:5–13). *See Montells v. Haynes,* 133 *N.J.* 282, 287, 627 *A.*2d 654 (1993) (recognizing LAD amendment).

Similarly, the various claims actionable under the Consumer Fraud Act (CFA), *N.J.S.A.* 56:8–1 to –20, also evidence the difference between those civil causes of action entitled to the constitutional right to a jury trial and those that are not. In *Kugler, supra,* the Attorney General filed a claim in Chancery Court, seeking to permanently enjoin an automobile seller from altering odometer readings on previously driven cars, as well as relief in the form of restitution and statutorily defined monetary damages. 120 *N.J.Super.* at 575, 295 *A.2d* 385. The Appellate Division panel explained that injunctive relief was the primary remedy authorized by *N.J.S.A.* 56:8–8, and that at common law and under the New Jersey Constitution, the right to trial by jury was not recognized in equitable claims. *Id.* at 581–82, 295 *A.2d* 385. Thus, in finding no jury trial right was violated, the court concluded that "[t]he matter before the court is an action completely unknown to the common law. It arises out of a [provision of a] statute evidencing the Legislature's recognition of the complexities of commercial bargaining in contemporary society and the need for the protection of the consumer." *Id.* at 582, 295 *A.2d* 385.

By way of contrast, in *Zorba Contractors, Inc. v. Housing Authority of Newark,* 362 *N.J.Super.* 124, 128–30, 827 *A.2d* 313 (App.Div.2003), the Appellate Division was called on to review whether a constitutional right to a jury trial existed for litigants who commenced an action under *N.J.S.A.* 56:8–19, another provision of the CFA, against a company that provided plywood and failed to meet fire retardant treatment standards. Because that CFA provision authorizes "legal relief," the panel inferred that a jury trial right should attach. *Id.* at 137, 827 *A.2d* 313. The panel reasoned that "the forms of relief specifically authorized ... are monetary—compensatory damages, trebling of those damages and attorneys fees—which is a hallmark of a legal action." *Id.* at 138, 827 *A.2d* 313. The panel also noted additional reasons for recognizing a right to a jury trial. The specific provision limits the class of litigants who may recover to those who suffered an "ascertainable loss of moneys or property." *Ibid.* Also, the

statute requires knowingly, with the intent of inducing reliance, concealing, suppressing, or omitting a material fact to the detriment of another. *Id.* at 139, 827 *A.*2d 313. These elements mirror the elements required to establish common-law fraud. *Id.* at 139–40, 827 *A.*2d 313. For those reasons, the Appellate Division concluded that a trial by jury constitutionally was required for this common-law fraud-based cause of action. *Id.* at 140, 827 *A.*2d 313.

Closer to the question at hand is the recent Appellate Division decision in *Muise v. GPU Inc.,* 332 *N.J.Super.* 140, 753 *A.*2d 116 (App.Div.2000). There, the panel considered whether consumers seeking damages from a utility company for electric outages had a right to a jury trial when the underlying claim was rooted in common-law principles of negligence. *Id.* at 146–48, 166, 753 *A.*2d 116. The court explained, "certain questions about the provision of safe and adequate electric service are within the Board [of Public Utility]'s exclusive jurisdiction, whereas customer damage claims against defendants for the negligent failure to provide such service are not." *Id.* at 165, 753 *A.*2d 116. The court ultimately concluded that because the claims for damages were rooted in common-law principles of negligence, a jury trial *de novo* was constitutionally owed to the consumers. *Id.* at 166, 753 *A.*2d 116.

With those legal principles and their past application in mind, we turn to address the nature of Melcar's claim in order to determine whether the constitutional right to a jury trial is implicated.

## V.

*N.J.S.A.* 48:2–80(d), on its face, provides no right to a trial by jury. The Legislature instead has required JCP&L and other private litigants seeking monetary relief for property damages included under *N.J.S.A.* 48:2–80(d) to submit to an undesignated, alternative dispute resolution process to be developed by the ODS. The ODS has chosen arbitration to carry out its assigned task. In the setting presented to us, our prior case law compels the conclusion that mandatory, binding arbitration is impermissible

because it effectively denies JCP&L and other private litigants their constitutionally guaranteed right to a trial by jury for a common-law cause of action in negligence.

In New Jersey, as elsewhere, it is widely accepted that a negligence cause of action requires the establishment of four elements: (1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages. *See, e.g., Stanley Co. of Am. v. Hercules Powder Co.*, 16 *N.J.* 295, 315, 108 *A.*2d 616 (1954); *Ochs v. Pub. Serv. Railway Co.*, 81 *N.J.L.* 661, 662, 80 *A.* 495 (E. & A.1911); *Black's Law Dictionary* 1133–34 (9th ed.2009).

> The standard of care ordinarily imposed by negligence law is well established. To act non-negligently is to take reasonable precautions to prevent the occurrence of foreseeable harm to others. What precautions are "reasonable" depends upon the risk of harm involved and the practicability of preventing it. We ordinarily evaluate a defendant's conduct on the basis of what a "prudent man" would have done in defendant's circumstances.
>
> The reasonableness of action in relation to foreseeable risks is an essentially objective determination to be made on the basis of the material facts. It is not, however, enough to ground liability in negligence to show that a defendant did not act with reasonable care, and that this carelessness caused injury. Plaintiff must also show that defendant owes him a duty of care.
>
> [*Weinberg v. Dinger*, 106 *N.J.* 469, 484–85, 524 *A.*2d 366 (1987) (internal citations omitted).]

Negligence liability is rooted in fundamental, common-law "social, moral and ethical policy"

> that "hedges round the lives and persons of men with much more care" than is given to the guarding of their property, "so that, ... [the law] makes, in a way, everyone his brother's keeper, and, therefore it may well be doubted whether in any supposable case redress should be withheld from an innocent person who has sustained immediate damage by the neglect of another in doing an act which, if carelessly done, threatens, in a high degree, one or more persons with death or great bodily harm"; "Such misfeasances, if they result fatally, are indictable crimes"; and "Where they inflict particular damage upon individuals they should, it is conceived, be actionable." One may not do for his own benefit or pleasure that which, in its natural consequence, will substantially invade the equal rights of another.
>
> [*Wytupeck v. Camden*, 25 *N.J.* 450, 460–61, 136 *A.*2d 887 (1957) (quoting *Van Winkle v. Am. Steam Boiler Co.*, 52 *N.J.L.* 240, 19 *A.* 472 (Sup.Ct.1890) (Beasley, C.J.)).]

*See also* Theodore F. Plucknett, *A Concise History of the Common Law* 461–71 (5th ed.1956) (detailing historical development of common-law cause of action in negligence from earlier cognizable actions for trespass and actions for "case"); *One 1990 Honda Accord, supra,* 154 *N.J.* at 379, 712 *A.*2d 1148.

The core of JCP&L's claim is that Melcar failed to exercise a duty of ordinary care recognized in *N.J.S.A.* 48:2–80(d), which resulted in $13,176.65 in damages to JCP&L's utility lines. Among the various legal grounds on which JCP&L relied to support its claim for damage to its property, JCP&L specifically alleged in its complaint that Melcar "negligently planned, performed, and supervised the excavation by failing to obtain or provide a mark out" as required under *N.J.S.A.* 48:2–80(d), "by failing to hand dig as statutorily required, or by failing to use appropriate care during the course of the excavation activities." The complaint goes on to describe that "[a]s a direct and proximate result of the negligence of Defendant[s,] ... [JCP&L] expended $13,176.65 ... to repair and/or replace the damage to its property." Further, the complaint alleges that Melcar "carelessly, negligently, and recklessly operated their excavation equipment, causing damage to property and/or equipment owned by [JCP&L]." These causes of action are governed by the standard of care codified in *N.J.S.A.* 48:2–80(d), but they are inherently common-law causes of action in negligence.

The purpose of the UFPA is to reduce the possibility of damaging underground infrastructure, which could result in fires and explosions. *See N.J.S.A.* 48:2–74. *N.J.S.A.* 48:2–80 requires underground facility operators to mark underground systems prior to excavation. In essence, *N.J.S.A.* 48:2–80 establishes that operators of underground facilities owe a duty to excavators. When operators fail to mark the systems as required by the statute, they breach that duty. If that breach of duty causes damages to other utility companies whose property is underground, subsection (d) of *N.J.S.A.* 48:2–80 recognizes liability for that damage, but it remains a property damage claim rooted in the negligence of another.

Clearly, excavators must use reasonable care to avoid damaging the property of operators of underground facilities. *N.J.S.A.* 48:2–82(d)(3) expressly imposes on excavators the common-law responsibility of due care, which requires that an excavator shall, among other things, "[u]se reasonable care during the excavation or demolition to avoid damage to or interference with underground facilities." Thus, as evidenced by the statute's plain language, the Legislature contemplated that principles of common-law negligence underlie this statutory cause of action.

The nature of the cause of action addressed in the UFPA, specifically as its provisions deal with property damage incurred by operators of underground facilities as a result of excavations, renders the relief available under subsection (d) of *N.J.S.A.* 48:2–80 indistinguishable from a common-law action for property damage. Such suits were part of the actions recognized at common law to which a right to jury trial attached at the time that our State Constitution enshrined the continuing civil jury trial right. The Legislature was not at liberty to ignore the right to a civil jury trial for property damages when enacting the UFPA. Indeed, as already noted, elsewhere in the UFPA the Legislature made express reference to the right to pursue a civil remedy for damages. *See N.J.S.A.* 48:2–86(d); *N.J.S.A.* 48:2–88(b). In light of its express reference to the right to pursue civil remedies elsewhere in the statute, we cannot insert language that the Legislature could have included in subsection (d)—but did not.

We therefore must turn to address the legislative decision to compel parties with such civil property damage claims to submit to dispute resolution before the ODS, without having imposed any limits on the required alternative dispute resolution process.

## VI.

### A.

The judicial process in New Jersey uses mandatory, nonbinding arbitration in certain limited circumstances. The Legisla-

ture has expressly required that litigants submit to that compelled, nonbinding alternative dispute resolution process in certain instances. *See L.* 1983, *c.* 358 (codified as amended by *N.J.S.A.* 39:6A–24 to –35); *Taha v. De Palma*, 214 *N.J.Super.* 397, 398–401, 519 *A.*2d 905 (App.Div.1986) (explaining Legislature's establishment of mandatory but nonbinding arbitration for personal injury auto negligence claims under *N.J.S.A.* 39:6A–24 to –35); *see also L.* 1987, *c.* 329 (codified as amended at *N.J.S.A.* 2A:23A–20 to –30). We have reviewed those legislative enactments and collected their procedures in *Rule* 4:21A–1(a):

(1) Automobile Negligence Actions. All tort actions arising out of the operation, ownership, maintenance or use of an automobile shall be submitted to arbitration in accordance with these rules.

(2) Other Personal Injury Actions. Except for professional malpractice and products liability actions, all actions for personal injury not arising out of the operation, ownership, maintenance or use of an automobile shall be submitted to arbitration in accordance with these rules.

(3) Other Non–Personal Injury Actions. All actions on a book account or instrument of obligation, all personal injury protection claims against plaintiff's insurer, and all other contract and commercial actions that have been screened and identified as appropriate for arbitration shall be submitted to arbitration in accordance with these rules.[5]

*Rule* 4:21A–1(c)(1) permits the removal of any case in one of those categories from arbitration to Superior Court if there is a novel legal issue, the facts are unusually complex, or if the case "is otherwise ineligible for arbitration." Importantly, however, arbitration does not cut off the right to a jury trial. The process concludes with the option of a trial *de novo.* *R.* 4:21A–6(c) (preserving jury trial *de novo*). Indeed, even when the Legislature has acted to compel the use of arbitration, this Court has highlighted the important caveat of permitting a right to a trial *de novo* following mandatory arbitration whenever the constitutional right to jury trial was implicated.

---

[5] We amended *Rule* 4:21A–1 to add mandatory, nonbinding arbitration in the category of cases identified in subsection (a)(3). *See R.* 4:21A–1(a)(3) (effective Sept. 5, 2000).

In *Hartsfield v. Fantini*, 149 *N.J.* 611, 615–16, 695 *A.*2d 259 (1997), we reviewed the legislatively required mandatory arbitration process for certain automobile accident claims with damages totaling less than $15,000. *See N.J.S.A.* 39:6A–24 to –35. We approved the process in recognition that the Legislature intended for either party to the arbitration to petition the Superior Court and obtain a *de novo* jury trial on the legal issue presented to the arbitrator. *Id.* at 615, 695 *A.*2d 259 (citing *N.J.S.A.* 39:6A–31, authorizing trial *de novo* postarbitration).

We similarly analyzed an analogous statutory framework in *N.J.S.A.* 2A:23A–20(a), which mandates arbitration for certain personal injury actions when damages amount to $20,000 or less. Again, we recognized that either party to the arbitration could petition the court " 'within 30 days of the filing of the arbitration decision for a trial *de novo*.' " *Hartsfield, supra,* 149 *N.J.* at 615–16, 695 *A.*2d 259 (quoting *N.J.S.A.* 2A:23A–26). In both scenarios, the Legislature "sought to preserve an individual's right to a jury trial by providing that a person dissatisfied with the arbitration award has the right to request a trial *de novo*." *Id.* at 617, 695 *A.*2d 259; *see also Mack v. Berry*, 205 *N.J.Super.* 600, 603, 501 *A.*2d 605 (Law Div.1985) (reasoning that parties in automobile arbitration actions "cannot be denied the constitutionally-guaranteed right to a jury trial once they have participated in the arbitration process").[6]

## B.

▮▮▮ *N.J.S.A.* 48:2–80(d) is a unique statute because it retains no option for a trial *de novo*. Research fails to reveal any other

---

[6] Disputes over attorneys' fees is the only area that we could identify in which a trial *de novo* does not accompany a process compelling submission of a dispute to binding arbitration. *R.* 1:20A–3. In *Matter of LiVolsi*, 85 *N.J.* 576, 587–91, 428 *A.*2d 1268 (1981), we concluded that no jury trial right was abridged by such proceedings because under the common law "attorneys never had an absolute right to trial by jury in fee dispute cases," and the Chancery Division, a court of equity, has traditionally exercised jurisdiction over attorneys' fees.

New Jersey statute that has cut off a private litigant's right to a trial by jury for a cause of action rooted in common law by not expressly including the right to a trial *de novo*.

The Legislature has mandated binding arbitration as the method of dispute resolution in a limited number of circumstances, generally concerning resolution of public sector collective negotiations. Examples include *N.J.S.A.* 27:25–14 (concerning employer-employee relations within New Jersey Transit Corporation), *N.J.S.A.* 34:13A–16 (dealing with labor negotiations with public fire and police departments), *N.J.S.A.* 52:27BB–61 (addressing municipalities and school districts in unsound financial condition), and *N.J.S.A.* 58:10–23.11(n) (concerning pollution claims arising from discharges into water). In each of those instances, the Legislature clearly stated that arbitration was to be the form of dispute resolution. However, in each of those instances, the Legislature was not addressing the resolution of causes of action recognized at common law.[7] Thus, the Legislature had the ability to prescribe a nonconsensual form of dispute resolution, unmoored to any requirement that it must carry a *de novo* right to a trial by jury. *See Shaner, supra,* 116 *N.J.* at 454–55, 561 *A.*2d 1130.

Here, the Legislature did not preserve the right to a trial *de novo*, as it has done on earlier occasions. *See, e.g., N.J.S.A.* 39:6A–31; *N.J.S.A.* 2A:23A–25. We cannot accept that the ODS can "fix" this statutory deficiency by saying that it will recognize a right to a *de novo* trial should its arbitration process prove unsuccessful in resolving the dispute. The ODS assumes a broad authorization with that suggestion, one that is not apparent on the

---

[7] To the extent the Appellate Division, in reaching a contrary conclusion, relied on *Division 540, Amalgamated Transit Union v. Mercer County Improvement Authority,* 76 *N.J.* 245, 246, 386 *A.*2d 1290 (1978), that reliance was misplaced. *See ibid.* (upholding requiring parties to public sector labor disputes to submit to binding arbitration after other negotiation and alternative dispute resolution fail to achieve agreement).

face of a statute that has delegated the ODS with limited regulatory authority.  We can only judge this statute on its face.[8]

In conclusion, *N.J.S.A.* 48:2–80(d) states that a party "shall" submit to the ODS's alternative dispute resolution process. The Legislature did not identify its preferred method.  The ODS offers processes that end with arbitration.  The ODS purports to add to the statute that gave it authority to engage in alternative dispute resolution over these matters a right to a trial *de novo* when the Legislature itself did not include such relief.[9]  However, an administrative agency can only act reasonably within the scope of its delegated authority.  *See, e.g., Med. Soc'y of N.J. v. N.J. Dep't of Law & Pub. Safety*, 120 *N.J.* 18, 25–26, 575 *A.*2d 1348 (1990) ("An administrative regulation, however, cannot alter the terms of a statute or frustrate the legislative policy."); *DOL v. Pepsi–Cola Co.*, 170 *N.J.* 59, 61, 784 *A.*2d 64 (2001) (same); *Kaprow v. Bd. of Educ. of Berkeley Twp.*, 131 *N.J.* 572, 581, 622 *A.*2d 237 (1993) (same).

*N.J.S.A.* 48:2–80(d) is unusual in that it is binding on litigants who are effectively suing in negligence under a statutory standard of care for a claim rooted in common-law negligence causing damage to property.  We have no recourse except to declare the statute as written to be constitutionally flawed.  Neither we, nor the ODS, may write in a right to a trial *de novo* to save this statute from its constitutional shortcoming.  We leave its correction to the Legislature.

---

[8] We regard this challenge as a facial challenge.  Thus, JCP & L was not required to assert its right to a jury trial in order to pursue its constitutional challenge to *N.J.S.A.* 48:2–80(d), which—on its face—provides no such right.

[9] As noted, on December 17, 2012, the ODS proposed a rule setting forth its procedures for arbitration of claims under the UFPA.  *See* Alternative Dispute Resolution Process for Underground Facility Protection Act Damages Claims, 44 *N.J.R.* 3056 (proposed Dec. 17, 2012) (to be codified at *N.J.A.C.* 17:39).

## VII.

The judgment dismissing JCP&L's cause of action is reversed. This matter is remanded for further proceedings before the Law Division.

*For reversal and remandment*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN, HOENS and PATTERSON—5.

*Opposed*—None