**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5375-15T2

SEUNG YON CHOI and
GERALD J. KEANE on behalf
of E.K., a Minor as Guardian
Ad Litem, and SEUNG YON CHOI,
and GERALD J. KEANE, individually,

    Plaintiffs-Appellants,

v.

HUNTERDON COUNTY YMCA, INC.,
MICHAEL TRIANIO, CHRIS NALLEN,
ALEX BAKER, ERICA CROAT, THE NEW JERSEY
PROFESSIONAL GOLFERS ASSOCIATION, INC.,
JAMES MULLEN,

    Defendants,

and

THE PROFESSIONAL GOLFERS ASSOCIATION, INC.,

    Defendant-Respondent.

_____

Submitted September 19, 2017 — Decided November 1, 2017

Before Judges Yannotti and Leone.

On appeal from Superior Court of New Jersey,
Law Division, Hunterdon County, Docket No. L-
0159-14.

Carter, Van Rensselaer and Caldwell, attorneys for appellant (William J. Caldwell, on the brief).

Cascio & Capotorto, attorneys for respondent (Jeffrey A. Savage, on the brief).

PER CURIAM

This action arises out of injuries sustained by a five-year-old girl, E.K., while attending a golf camp. Plaintiffs, E.K.'s parents Seung Yon Choi and Gerald J. Keane, brought suit on their own behalf and on behalf of E.K. They appeal from a June 28, 2016 order granting summary judgment to defendant Professional Golfers Association of America, Inc. (PGA). We affirm.

I.

In the summer of 2013, plaintiffs enrolled E.K. in a summer "Golf Camp" offered by defendant Hunterdon County YMCA, Inc. (YMCA). The YMCA summer camp brochure's description of the Golf Camp stated that "PGA (Professional Golf Association) Professionals will provide a friendly and relaxing environment where your child can learn the fundamentals of" golf, and that "campers will spend half of the day with PGA professionals playing golf[.]" The PGA's logo was displayed above the description of the Golf Camp in the brochure.

On July 27, 2013, E.K. was accidentally struck in the mouth by a golf club swung by another minor child. E.K. sustained

injuries to her face and mouth including the loss of multiple baby teeth.

Plaintiffs filed suit against multiple defendants including the YMCA and several of its employees; Chris Nallen, the professional golfer hired as an instructor at the camp; the parents of the minor child that hit E.K. with the golf club; the New Jersey Professional Golfers Association, Inc. (NJPGA); the New Jersey Golf Foundation, Inc. (NJ Golf Foundation); the PGA Foundation; and the PGA. In their amended complaint, plaintiffs alleged that E.K. would not have been injured but for the negligent supervision of the Golf Camp and the campers. Plaintiff also alleged that Nallen was a member, official, agent, servant, or independent contractor of the PGA, that the PGA had a duty to ensure Nallen would properly supervise the Golf Camp, and that the PGA was an independent contractor of the YMCA.

The PGA filed a motion for summary judgment. The motion was denied on January 28, 2016, because discovery had not yet been completed and the court wanted to give plaintiffs the opportunity to develop their claim against the PGA. Plaintiffs then settled with the NJPGA, NJ Golf Foundation, Nallen, and the YMCA and its employees. After the close of discovery, the PGA filed a renewed motion for summary judgment, arguing that it owed no duty of care

A-5375-15T2

to plaintiffs. On June 28, 2016, Judge Michael F. O'Neill granted the PGA's renewed motion for summary judgment. Plaintiffs appeal.

## II.

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). "[T]he court must accept as true all the evidence which supports the position of the party defending against the motion and must accord [that party] the benefit of all legitimate inferences which can be deduced therefrom." Id. at 535 (citation and internal quotation marks omitted).

An appellate court "review[s] the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016). We must hew to that standard of review.

Based on our standard of review, we affirm substantially for the reasons set forth in Judge O'Neill's thoughtful and well-reasoned decision issued on June 28, 2016. We add the following.

III.

"[A] negligence cause of action requires the establishment of four elements: (1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 594 (2013). "The determination of the existence of a duty is a question of law for the court." Petrillo v. Bachenberg, 139 N.J. 472, 479 (1995). "Under respondeat superior, an employer can be found liable for the negligence of an employee causing injuries to third parties, if, at the time of the occurrence, the employee was acting within the scope of his or her employment." Carter v. Reynolds, 175 N.J. 402, 408-09 (2003). To establish liability, a plaintiff must show "that a master-servant relationship existed." Id. at 409. "If no master-servant relationship exists, no further inquiry need take place because the master-servant relationship is sine qua non to the invocation of respondeat superior." Ibid.

The record indicates Nallen was hired by the NJ Golf Foundation as an independent contractor to run the YMCA's Golf Camp. The NJ Golf Foundation paid Nallen $2700 for his services, which was reflected in an IRS form 1099-MISC used for reporting

income paid to independent contractors. The PGA is not mentioned in the agreement signed by the YMCA and the NJPGA. Plaintiffs failed to offer any evidence that would show, or even create a genuine dispute of fact, that Nallen was in a master-servant relationship with the PGA. We agree with the trial court that a master-servant relationship was not established merely because Nallen was a professional golfer who had competed in PGA events as a member of the PGA. See Basil v. Wolf, 193 N.J. 38, 62 (2007) (a principal is generally immune from liability for the negligence of an independent contractor).

## IV.

Plaintiffs argue that even if Nallen was an independent contractor, liability can still be imposed under the doctrine of apparent authority or agency. See Sears Mortg. Corp. v. Rose, 134 N.J. 326, 337-38 (1993). "If a principal cloaks an independent contractor with apparent authority or agency, the principal can be held liable as if the contractor were its own employee if it held out the contractor to the plaintiff as its own servant or agent." Basil, supra, 193 N.J. at 63. Liability may be imposed on the principal based upon "apparent authority" when "the principal's actions have misled a third-party into believing that a relationship of authority in fact exists." Mercer v. Weyerhaeuser Co., 324 N.J. Super. 290, 317 (App. Div. 1999).

Liability arises if "the principal has by his voluntary act placed the agent in such a situation that a person of ordinary prudence, conversant with business uses, and the nature of the particular business, is justified in presuming that such agent has the authority to perform the particular act in question." Id. at 318 (citation omitted).

To satisfy its burden of establishing the apparent authority or apparent agency relationship, plaintiffs had to establish: "(1) that the appearance of authority has been created by the conduct of the alleged principal and it cannot be established 'alone and solely by proof of [conduct by] the supposed agent,' (2) that a third party has relied on the agent's apparent authority to act for a principal, and (3) that the reliance was reasonable under the circumstances." Ibid. (citations omitted).

Plaintiffs seek to impose liability on the PGA based on the use of the PGA logo and references to the PGA in the YMCA's summer camp brochure. In Mercer, we reversed summary judgment granted to Weyerhaeuser, a large building and lumber supply company, because "[t]here was no dispute that Weyerhaeuser authorized [the home builder] to use its logo on [the home builder's] business cards, brochures, press lists, correspondence and newspaper advertisements at the time that plaintiffs purchased their homes." Mercer, supra, 324 N.J. Super. at 321. As such, there was a

factual dispute over "whether plaintiffs relied on Weyerhauser's conduct (lending [the home builder] its name and logo for marketing purposes) in deciding to purchase these homes[.]" Id. at 319.

By contrast, there was no evidence of voluntary conduct on the part of the PGA to create an appearance that the YMCA or Nallen had authority to act for the PGA. Indeed, there was no evidence the PGA was involved in any aspect of the planning or administration of the YMCA's camp. There was no evidence the PGA was even aware of the use of its logo or name in the YMCA's brochure prior to this lawsuit, let alone that it authorized its use for the YMCA's marketing purposes. Again, the appearance of authority "cannot be established 'alone and solely by proof of [conduct by] the supposed agent[.]'" Mercer, supra, 324 N.J. Super. at 318 (citations omitted).[1]

Moreover, the PGA did not hold Nallen out as its agent or employee. Indeed, there was no evidence the PGA was involved in any aspect of the planning or administration of the YMCA's camp. Thus, plaintiffs, unlike the plaintiffs in Mercer, have failed to meet their burden to show apparent authority. Therefore, we need

---

[1] The PGA asserts the use of its logo was apparently authorized by the NJ Golf Foundation or the NJPGA, which contracted with the YMCA. Plaintiffs have not shown those entities were alter egos of the PGA.

A-5375-15T2

not address whether plaintiffs relief on the alleged apparent authority, or whether that reliance was reasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION