**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5211-16T2

TIMOTHY J. KANE,

    Plaintiff-Appellant,

v.

PETER ROBINSON, BERNETTA
HIBBERT, and RUSSELL HIBBERT,

    Defendants-Respondents.

_____

Argued May 24, 2018 — Decided June 25, 2018

Before Judges Gilson and Mitterhoff.

On appeal from Superior Court of New Jersey,
Law Division, Somerset County, Docket No.
DC-003847-16.

Timothy J. Kane, appellant, argued the cause
pro se.

John P. Gilfillan argued the cause for
respondents (Kennedy CMK, LLP, attorneys;
Kersten Kortbawi, on the brief).

PER CURIAM

In this personal injury action, plaintiff Timothy J. Kane

appeals from a May 16, 2017 order granting summary judgment to

defendants because plaintiff failed to produce an expert report

addressing the cause of his alleged injuries. We affirm in part and reverse in part. We affirm the order to the extent that plaintiff alleged permanent injuries or the need for corrective surgery, because without an expert plaintiff could not establish causation. We are constrained, however, to reverse the order to the extent that plaintiff sought to recover the $4,815.06 he certified he paid for medical treatment related to the alleged incident. As to those medical costs, plaintiff presented sufficient facts to allow a fact finder to rule on causation.

## I.

We discern the facts from the summary judgment record, and construe them in the light most favorable to plaintiff, the non-moving party. Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405-06 (2014). Plaintiff, who was sixty-nine years old at the time, was walking on a public street near his home on October 31, 2014. He alleges that a pit bull attacked him. The dog did not bite plaintiff, but it did knock him over. When plaintiff fell, he felt pain in his left knee and right shoulder. Accordingly, plaintiff went to the hospital that same day.

At the hospital, plaintiff reported that he had a prior injury to his left knee. The hospital records state that plaintiff's "[p]roblems" included "[c]ontusion of elbow," "superficial abrasion," and "[c]ontusion of knee." The "[p]rimary [d]iagnosis"

of the physician assistant and doctor who examined plaintiff at the hospital was "[c]ontusion of knee." Plaintiff was informed that he had a "knee sprain," and he was discharged with instructions that included icing his knee and keeping his knee elevated for twenty-four hours. The hospital also instructed plaintiff to "[a]rrange for a follow up appointment with [his] own Primary Care Provider." The hospital charged plaintiff $2177 for his visit, which included charges for visiting the emergency room and having an x-ray.

On November 10, 2014, plaintiff saw Dr. Norman Glassner, a physician who had previously treated plaintiff. Dr. Glassner's notes stated that plaintiff reported he was knocked over by a pit bull, landed on his left knee, and injured his right shoulder. The notes also reflect that "[plaintiff] immediately had a lot of pain. He is having trouble sleeping. This was about ten days ago." Dr. Glassner directed plaintiff to go to physical therapy twice a week for eight weeks. Finally, Dr. Glassner, who was retiring, recommended that plaintiff follow up with Dr. Michael Pollack at Hunterdon Orthopedic Institute. Dr. Glassner charged plaintiff $350 for that examination.

In November and December 2014, plaintiff went to physical therapy at the Kessler Institute for Rehabilitation. He was charged $2,288.06 for that physical therapy.

A-5211-16T2

Plaintiff did not follow up immediately with Dr. Pollack. On March 10, 2017, however, plaintiff went to see Dr. Pollack, who ordered a magnetic resonance imaging (MRI) of plaintiff's right shoulder.[1] According to plaintiff, Dr. Pollack contacted him on March 13, 2017, and told him he would need arthroscopic surgery to correct his right shoulder.

The same day that plaintiff was knocked over by the pit bull, the police were contacted regarding the incident. The responding police officer met with plaintiff after he was released from the hospital on October 31, 2014. A township animal control officer informed the investigating police officer that a white pit bull was picked up on October 31, 2014. The dog had an expired license, naming Peter Robinson as its owner and listing Robinson's address.

On October 28, 2016, plaintiff, representing himself, filed a complaint in the Special Civil Part. As defendants, plaintiff named Peter Robinson, and his parents, Bernetta and Russell Hibbert, who allegedly lived with Robinson at the address listed on the dog license. In his complaint, plaintiff alleged that the pit bull was negligently allowed to run loose, attacked plaintiff,

---

[1] Plaintiff represents that he visited Dr. Pollack on March 2, 2017, however, we were not provided with any documents relating to that visit. We only were given the MRI report dated March 10, 2017.

A−5211−16T2

and caused him damages, including "medical bills plus pain and suffering[.]"

Defendants initially failed to respond, but eventually they retained legal counsel and filed an answer in January 2017. Defendants also sought discovery. In response to a request for his damage claims, plaintiff produced a certified statement listing his medical bills resulting from the "pit bull attack" as

| | |
|---|---:|
| St. Peter's Hospital | 1,507.00 |
| Emergency [Department] | 595.00 |
| X-ray October 31, 2014 visit | 75.00 |
| Dr. Glassner M.D. Orthopedic | 350.00 |
| Physical Therapy | 1,016.72 |
| Kessler Rehab, North Brunswick, NJ | 1,271.34 |
| Total | $4,815.06 |

Plus additional monies for pain and suffering by the plaintiff which the jury shall award the [p]laintiff.

Also please find the [c]ertification of Timothy J. Kane.

In response to a follow up request from defense counsel, plaintiff obtained and produced a February 13, 2017 letter from the Center for Medicare and Medicaid Services (CMS). The CMS letter attached a payment summary showing that Medicaid paid $1,187.11 out of the $4,815.06 plaintiff was charged for his hospital visit, examination by Dr. Glassner, and physical therapy. The CMS letter also informed plaintiff that the $1,187.11 in payments "are subject to reimbursement to Medicare from proceeds

[he] may receive pursuant to a settlement, judgment, award, or other payment."

Plaintiff also listed the witnesses he intended to call at trial as the animal control officer, the responding police officer, Dr. Glassner, and Dr. Pollack.

The case was first listed for trial on February 23, 2017, but that date was adjourned. On March 23, 2017, defendant filed a motion for summary judgment.[2] Defendants contended that plaintiff had no medical expert and that he needed such an expert to support causation between the alleged negligence in allowing their dog to knock over plaintiff and plaintiff's injuries. Plaintiff filed opposition and cross-moved to transfer the case to the Law Division. Thereafter, on May 12, 2017, the trial court heard oral arguments.

On May 16, 2017, the court granted summary judgment to defendants and issued a written statement of reasons. The trial court ruled that plaintiff needed an expert to establish causation between defendants' negligence and the injuries and damages

---

[2] Counsel for defendant represents that at the trial call on February 23, 2017, counsel moved, apparently orally, to dismiss plaintiff's complaint because plaintiff had not produced a medical expert. According to defense counsel, the court directed plaintiff to file an expert report by March 16, 2017. We were not provided, however, with the February 23, 2017 transcript, nor the order directing plaintiff to produce an expert report.

plaintiff suffered. The court then examined the medical records submitted by plaintiff. In particular, the court focused on three documents: (1) a March 2, 2017 letter from Dr. Pollack;[3] (2) a March 10, 2017 MRI report; and (3) the November 10, 2014 office notes of Dr. Glassner. The court ruled that none of those documents "provide[d] an expert opinion/report to a reasonable degree of medical certainty that Plaintiff's alleged injuries were proximately caused by Defendant's alleged negligence." Consequently, the court granted summary judgment to defendants and dismissed plaintiff's complaint with prejudice.

## II.

Plaintiff appeals and argues that (1) defendants were negligent in allowing their pit bull to run loose; (2) defendants' motion for summary judgment did not meet the requirements of Rule 4:46-2; (3) his complaint should be reinstated; and (4) his injuries and damages were established by his medical records. Alternatively, plaintiff contends that we should reinstate his complaint under Rule 2:10-2.

We will focus on plaintiff's alleged damages and injuries. We use a de novo standard to review a summary judgment order and apply the same standard employed by the trial court. Davis, 219

---

[3] The record does not contain the March 2, 2017 letter.

N.J. at 405. Accordingly, we determine whether, viewing the facts in the light most favorable to the non-moving party, the moving parties have demonstrated that there are no genuine disputes as to any material facts and they are entitled to judgment as a matter of law. R. 4:46-2(c); Davis, 219 N.J. at 405-06; Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

To establish negligence, a plaintiff must prove: "(1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." Davis, 219 N.J. at 406 (quoting Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 594 (2013)). "[P]laintiff bears the burden of establishing those elements 'by some competent proof.'" Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Davis, 219 N.J. at 406).

To be entitled to an award of damages a plaintiff must prove that he or she suffered some loss or injury. Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 41 n.1 (1984). "Compensatory damages are designed to compensate a plaintiff for an actual loss or injury." Id. at 48. To demonstrate actual loss or injury, a plaintiff must provide the fact finder with "some information from which to estimate the amount of damages, even if [plaintiff] is unable to prove the exact measure of his [or her] damages[.]" Id. at 41 n.1. Indeed, calculation of damages should be left "to the good sense of the jury [or fact finder] . . . to

form, from the evidence, the best estimate that can be made under the circumstances as a basis for compensatory damages." Ibid. (quoting Jenkins v. Pa. R.R. Co., 67 N.J.L. 331, 334 (E. & A. 1902)).

In some cases, expert testimony is necessary to prove negligence. N.J.R.E. 702 permits expert testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Thus, expert testimony must "relate[] to a relevant subject that is beyond the understanding of the average person of ordinary experience, education, and knowledge." State v. Sowell, 213 N.J. 89, 99 (2013) (quoting State v. Odom, 116 N.J. 65, 71 (1989)). Expert testimony is not needed where the fact finder's "common knowledge as [a] lay person[] is sufficient to enable [him or her], using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized knowledge of experts." Hubbard v. Reed, 168 N.J. 387, 394 (2001) (quoting Estate of Chin v. St. Barnabas Med. Ctr., 169 N.J. 454, 469 (1999); see also Brenman v. Demello, 191 N.J. 18, 35 (2007) (holding that expert testimony is not necessary to prove the relationship between an accident and the extent of any resulting injuries).

Moreover, a plaintiff may offer testimony from his or her treating physician to support a claim for negligence. Our Supreme Court has held "that a treating physician may be permitted to testify as to the diagnosis and treatment of his or her patient, pursuant to N.J.R.E. 701." Delvecchio v. Twp. of Bridgewater, 224 N.J. 559, 577-78 (2016). Under N.J.R.E. 701,

> [w]hen treating physicians are called to testify about their observations, diagnosis and treatment of an injured or ailing plaintiff, they are not testifying as expert witnesses, even though they may possess the requisite qualifications. This is so even when they are asked for their opinions concerning the cause of the plaintiff's condition.
>
> [Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 4 on N.J.R.E. 701.]

In such cases, the treating physician's testimony is "limited to issues relevant to the diagnosis and treatment of the individual patient." Delvecchio, 224 N.J. at 579.

Here, viewed in the light most favorable to plaintiff, he has asserted two types of damage claims: (1) the medical expenses he incurred as a result of being knocked down by the pit bull, and (2) ongoing pain and suffering, including an alleged need for corrective surgery to his right shoulder. We agree with the trial court that plaintiff's allegations about permanent injuries and the need for corrective surgery to his shoulder require expert

medical testimony to establish causation between being knocked down and those injuries. Plaintiff has not produced an expert report and, thus, he cannot pursue those claims. Accordingly, we affirm summary judgment as to plaintiff's claims for permanent injury, including the need for corrective surgery to his right shoulder.

We reverse, however, as to plaintiff's claims for recovery of the $4,815.06 in medical expenses. In reviewing a summary judgment order, we must view the facts in the light most favorable to plaintiff. Plaintiff has identified and produced his medical records. Assuming that plaintiff can submit authenticated records at trial, he can show that he was charged $2177 for his hospital visit on October 31, 2014. Dr. Glassner then charged plaintiff $350 for his follow-up visit on November 10, 2014. Finally, plaintiff was charged $2,288.06 for physical therapy. Obviously, plaintiff will have to prove that he paid all those costs beyond the $1,187.11 paid by Medicare. If plaintiff did not pay any costs beyond what was covered by Medicare, then his recovery would be limited to the $1,187.11, which then would have to be reimbursed to Medicare.

Plaintiff does not need an expert to allow a fact finder to find causation between defendants' alleged negligence and the $4,815.06 in medical expenses. It is not beyond the ken of an

A-5211-16T2

average fact finder to understand that if plaintiff was knocked over by defendants' pit bull and felt pain in his knee and shoulder that it was reasonable for him to go to the hospital. The hospital records support plaintiff's contention that he had at least a knee sprain that required treatment that cost $2177.

A fact finder also could understand that plaintiff would reasonably follow up with another physician, Dr. Glassner, as directed by the hospital. Thus, a fact finder could conclude that the $350 charged by Dr. Glassner was an expense directly related to plaintiff being knocked over by defendants' pit bull.

Finally, a fact finder could understand that Dr. Glassner recommended physical therapy and find that being knocked over by defendants' pit bull was a proximate cause of plaintiff's physical therapy. Indeed, here plaintiff was prepared to call Dr. Glassner, who could have testified concerning his diagnoses and recommended treatment. N.J.R.E. 701; Delvecchio, 224 N.J. at 577-78. Accordingly, a fact finder could, if he or she finds causation, award $2,288.06 for physical therapy.

In summary, we affirm the order to the extent that it granted summary judgment on plaintiff's claims of permanent injuries or the need of further treatment or surgery. Those damage claims required proof of medical causation and plaintiff had no expert to establish causation. We reverse the order to the extent it

precluded plaintiff from seeking to prove causation as to the $4,815.06 he incurred in medical costs. Plaintiff presented sufficient evidence to allow a fact finder to determine if those costs were proximately caused by being knocked over by defendants' pit bull. On remand the trial court also can address plaintiff's motion to transfer the case to the Law Division, since that motion was deemed moot when summary judgment was granted to defendants. We express no view on the merits of that motion.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION